FILED
IN CLERK'S OFFICE
U.S. DISTRICT COURT E.D.N.Y.

★  FEB 0 4 2015  ★

BROOKLYN OFFICE

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
- - - - - - - - - - - - - - - - - - - - - - - - - - - - -x
DEAN NICOSIA, on behalf of himself and all
others similarly situated,

                              Plaintiff,               **MEMORANDUM AND ORDER**

            – against –                                14-cv-4513 (SLT) (MDG)

AMAZON.COM, INC.,

                              Defendant.
- - - - - - - - - - - - - - - - - - - - - - - - - - - - -x

**TOWNES, United States District Judge:**

    Plaintiff Dean Nicosia brings this putative class action against Amazon.com, Inc.

("Amazon" or "Amazon.com"), contending that Amazon has sold and continues to sell weight

loss supplements containing sibutramine, a "controlled substance … [that has] never been

permitted for sale without a prescription from a licensed physician … [and that is] associated

with a serious risk of cardiovascular events and strokes," in violation of various federal and state

consumer protection laws and in breach of various implied warranties.  (Compl. ¶¶ 2, 86-175.)

Currently before the Court are (1) Amazon's motion to dismiss on the grounds that, *inter alia*, all

of Plaintiff's claims are governed by a mandatory arbitration clause and class action waiver, and

(2) Nicosia's motion for a preliminary injunction, in which Nicosia asks this Court to grant the

following injunctive relief:

> A.  Requiring Amazon to comply with the 'special packaging' rules promulgated
> by the Consumer Product Safety Commission;
>
> B.  Preliminarily enjoining Amazon from further distributing any weight loss
> products that contain sibutramine; and
>
> C.   Providing a court-approved remedial notice to all consumers to whom
> Amazon sold products containing sibutramine, and post the same notice
> conspicuously on its website.

(Pl. PI Br. at 23-24.)  Amazon's motion to dismiss is granted because all of Plaintiff's claims are subject to mandatory arbitration and Plaintiff's motion for a preliminary injunction is denied because Plaintiff lacks standing.

**Factual Background**

Plaintiff Dean Nicosia is a resident of Wilmington, North Carolina.  He alleges that "during the class period(s) [he] was a resident of Massapequa, New York."  (Compl. ¶ 15.) Plaintiff twice, first on January 30, 2013 and then again on April 19, 2013, purchased diet drugs known as "1 Day Diet" from a third-party seller on Amazon.com.  (Compl. ¶¶ 7, 54-55.)

Sibutramine is a controlled substance only available by prescription.  The United States Food and Drug Administration ("FDA") had previously published a press release, on October 8, 2010, stating the "continued availability" of a certain diet drug containing sibutramine "is not justified when you compare the very modest weight loss that people achieve on this drug to their risk of heart attack or stroke," and reporting that the results of a clinical trial "demonstrated a 16 percent increase in the risk of serious heart events, including non-fatal heart attack, non-fatal stroke, the need to be resuscitated once the heart stopped, and death, in a group of patients given sibutramine compared to another given placebo."  (Compl. at ¶¶ 19-20 (quoting FDA Oct. 8, 2010 Press Release)).

Several months after Plaintiff made his purchases, on November 21, 2013, the FDA issued a "Public Notification" that the 1 Day Diet product contained "hidden" sibutramine. (Compl. ¶¶ 58-59.)  The FDA's November 21, 2013 Public Notification, which is directed towards the public, not retailers, does not call for any further action by retailers.  It states that:

> The Food and Drug Administration (FDA) is advising consumers not to purchase or use "1 Day Diet," a product promoted and for weight loss on various websites and possibly in some retail stores.

2

> FDA laboratory analysis confirmed that "1 Day Diet" contains sibutramine.  …
>
> Consumers should stop using this product immediately and throw it away.  Consumers who have experienced any negative side effects should consult a health care professional as soon as possible.  …
>
> Note: This notification is to inform the public of a growing trend of dietary supplements or conventional foods with hidden drugs and chemicals.  These products are typically promoted for sexual enhancement, weight loss, and body building, and are often represented as being "all natural."  FDA is unable to test and identify all products marketed as dietary supplements on the market that have potentially harmful hidden ingredients.  Consumers should exercise caution before purchasing any product in the above categories.

(Compl. at ¶ 19.)

The label on the container of the 1 Day Diet product did not list sibutramine as an ingredient.

(Compl. at ¶ 7.)  It is undisputed that neither Plaintiff nor Amazon knew, at the time that Plaintiff

made his purchases, that the 1 Day Diet product contained sibutramine.

According to Plaintiff, in making his purchases, he used an online account that he

established with Amazon.com on or about June 9, 2008.  When setting up his account, Plaintiff

checked a box indicating that he agreed with Amazon's "Conditions of Use."  The Conditions of

Use in effect in June 2008 (the "2008 Conditions of Use") provided, in relevant part, that:

> Any dispute relating in any way to your visit to Amazon.com or to products or services sold or distributed on Amazon or through Amazon.com in which the aggregate total claim for relief sought on behalf of one more parties exceeds $7,500 shall be adjudicated in any state or federal court in King County, Washington, and you consent to exclusive jurisdiction and venue in such courts.

(Duncan Decl. in Support of Pl.'s Opp'n to Motion to Dismiss Decl., Ex. C at 7.)  The 2008

Conditions of Use also stated, in relevant part: "We reserve the right to make changes to our site,

policies, and these Conditions of Use at any time."  (*Id*. at 8.)[1]

_____

[1] Plaintiff does not dispute that when he created his account in 2008, he affirmatively clicked a button expressly assenting to be bound to the terms of the 2008 Conditions of Use.  In his opposition brief, he repeatedly faults Amazon for failing to produce a copy of his June 2008

In addition, both times that Plaintiff made the purchases at issue in this litigation on the

Amazon.com website, he viewed a checkout screen that provided, on top, a hyperlink to the

then-current Conditions of Use and reminded customers that "by placing [an] order," they "agree

to Amazon.com's conditions of use." The Conditions of Use in effect as of December 5, 2012

through the period that Plaintiff made both of the purchases as issue in this litigation, (the "2012

Conditions of Use"), include the following provision, which is conspicuously displayed in bold

font:

### DISPUTES

**Any dispute or claim relating in any way to your use of any Amazon Service, or to any products or services sold or distributed by Amazon or through Amazon.com will be resolved by binding arbitration, rather than in court,** except that you may assert claims in small claims court if your claims qualify. The Federal Arbitration Act and federal arbitration law apply to this agreement.

**There is no judge or jury in arbitration, and court review of an arbitration award is limited. However an arbitrator can award on an individual basis the same damages and relief as court (including injunctive and declaratory**

---

online registration form. Amazon is under no obligation to produce Plaintiff's registration records, as Amazon does not allege that the 2008 Conditions of Use govern this dispute. In any event, Plaintiff's challenge "does not negate the uncontroverted and overwhelming evidence demonstrating that plaintiff could not have become a member of [Amazon].com without first agreeing to the website's [Conditions of Use], which included the forum selection clause" *Zaltz v. JDATE*, 952 F. Supp. 2d 439, 451 (E.D.N.Y. 2013) (finding, despite plaintiff's denial that she clicked an icon indicating that she agreed to JDate.com's terms prior to joining the website, "it is clear that in order to have obtained a JDate.com account, and in order to have maintained that account through various billing cycles, plaintiff clicked the box confirming that she had both read and agreed to the website's Terms and Conditions of Service … even though she does not recall the specific terms at this time."); *see also Fteja v. Facebook, Inc.*, 841 F.Supp.2d 829, 834–35 (S.D.N.Y. 2012) (explaining that declarations filed by defendant's employees, screenshots of defendant's website, and defendant's current website indicate that potential members must agree to the website's terms of service, which included a forum selection clause, in order to join the site, thereby negating the force of plaintiff's argument that he does not remember agreeing to the website's forum selection clause when he joined).

4

> **relief or statutory damages), and must follow the terms of these Conditions of Use as a court would.**

(Def. Ex. A at 5-6) (emphasis in original). The 2012 Conditions of Use also include a conspicuous class action waiver, also bolded, which states:

> **We each agree that any dispute resolution proceedings will be conducted only on an individual basis and not in class, consolidated or representative action.**

(*Id.* at 6) (emphasis in original).

On November 21, 2013, the same day that the FDA issued the Public Notification, Amazon banned the 1 Day Diet product from its website and removed any listings of the product from its website. Plaintiff did not purchase any 1 Day Diet products after the FDA's Public Notification was issued. (Compl. ¶¶ 54-55.) Upon learning that the 1 Day Diet products he purchased contained sibutramine, Plaintiff did not attempt to return the product to Amazon or engage in any dispute resolution with the third-party seller(s) who sold him sibutramine. Plaintiff does not allege that he suffered any medical complications as a result of taking the 1 Day Diet product.

On July 28, 2014, Plaintiff commenced the instant putative class action against Amazon, contending that Amazon has sold and continues to sell many different weight loss supplements containing sibutramine in violation of various federal and state consumer protection laws and in breach of various implied warranties. (Compl. ¶¶ 2, 86-175.) Currently before the Court are two motions. First, Amazon's motion to dismiss brought pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure on the grounds that, *inter alia*, Plaintiff's claims fall squarely within the scope of Amazon's mandatory arbitration and class waiver clauses. Second, Plaintiff's motion for a preliminary injunction, seeking, *inter alia*, warnings be sent to all Amazon customers who purchased any product containing sibutramine.

5

**Discussion**

I. **Motion to Dismiss**

    *A. Legal Standard*

        Amazon's motion is styled as a motion to dismiss "in favor of individual arbitration"

pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure. (Def.'s Br. at 5.) "[A]

number of other courts [in this Circuit] have … construe[d] … motion[s] to dismiss [based on the

existence of mandatory arbitration clauses] as [] motion[s] to compel arbitration." *Jillian Mech.*

*Corp. v. United Serv. Workers Union Local 355*, 882 F. Supp. 2d 358, 363 (E.D.N.Y. 2012); *75-*

*07 Food Corp. v. Trustees of United Food & Commercial Workers Local 342 Health Care Fund*,

No. 13-CV-5861 JFB ARL, 2014 WL 691653, at *4-5 (E.D.N.Y. Feb. 24, 2014).  However,

doing so would be inappropriate here because Amazon does "not explicitly [or implicitly]

request the district court to direct that arbitration be held," but rather, simply requests dismissal

of the action under the terms of the mandatory arbitration clause contained the 2012 version of

its Conditions of Use. *Wabtec Corp. v. Faiveley Transp. Malmo AB*, 525 F.3d 135, 140 (2d Cir.

2008) (finding conversion of motion to dismiss to motion to compel inappropriate where movant

did not explicitly or implicitly "petition the district court to compel arbitration[, but r]ather …

[sought to] prevent[ the plaintiff] from resolving any dispute in the courts."); *see also* 9 U.S.C.

§ 4.  Thus, rather than apply the standard applicable to motions to compel arbitration, which

resembles the standard applicable to summary judgment motions made pursuant to Federal Rule

of Civil Procedure 56, the Court considers this case under the standard applicable to motions to

dismiss made pursuant to Federal Rule of Civil Procedure 12(b)(6).[2]  *Compare Bensadoun v.*

---

[2] In this case, this may be a distinction without a difference, as this Court's reasoning
would apply with equal force if Amazon's motion were to be construed as a motion to compel,
given that the facts are not in dispute and this Court finds that "all of the plaintiff's claims must

*Jobe-Riat*, 316 F.3d 171, 175 (2d Cir. 2003) (explaining that courts evaluate motions to compel arbitration under a standard similar to the standard applicable to summary judgment motions) *with Wabtec*, 525 F.3d at 140 (affirming district court's denial of motion to dismiss under Rule 12 based on a mandatory arbitration agreement); *TradeComet.com LLC v. Google, Inc.*, 647 F.3d 472, 478 (2d Cir. 2011) (forum selection clauses are appropriately considered as grounds for dismissal under Rule 12(b)).

Under the now well-established *Twombly* standard applicable to motions to dismiss under Federal Rule of Civil Procedure 12(b)(6), a complaint should be dismissed only if it does not contain enough allegations of fact to state a claim for relief that is "plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). "While a complaint attacked by a Rule 12(b)(6) motion to dismiss does not need detailed factual allegations, a plaintiff's obligation to provide the grounds of his entitlement to relief requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Twombly*, 550 U.S. at 555 (alteration, citations, and internal quotation marks omitted). While Federal Rule of Civil Procedure 8 "marks a notable and generous departure from the hyper-technical, code-pleading regime of a prior era, ... it does not unlock the doors of discovery for a plaintiff armed with nothing more than conclusions." *Iqbal*, 556 U.S. at 678-79.

---

be submitted to arbitration," and "no useful purpose [would] be served by granting a stay of these proceedings," rather than dismissing the entire action. *See Berger v. Cantor Fitzgerald Sec.*, 967 F. Supp. 91, 96 (S.D.N.Y. 1997) (dismissing a complaint on a motion to compel arbitration, on the grounds that no useful purpose would be served by staying the case, as all claims were subject to the mandatory arbitration provision).

The Supreme Court has clarified that *Twombly* sets out a two-pronged approach for district courts considering motions to dismiss under Rule 12(b)(6). *Iqbal*, 556 U.S. at 678-79 (2009). District courts should first "identify[ ] pleadings that, because they are no more than conclusions, are not entitled to the assumption of truth," and second, if a complaint contains "well-pleaded factual allegations, a court should assume their veracity and then determine whether they plausibly give rise to an entitlement to relief." *Id.* at 679.

The Court is generally limited to the "facts stated in the complaint or documents attached to the complaint as exhibits or incorporated by reference." *Nechis v. Oxford Health Plans, Inc.*, 421 F.3d 96, 100 (2d Cir. 2005). It may also consider "matters of which judicial notice may be taken, or ... documents either in plaintiff[']s[] possession or of which plaintiff[] had knowledge and relied on in bringing suit." *Brass v. Am. Film Technologies, Inc.*, 987 F.2d 142, 150 (2d Cir. 1993) (citation omitted).

Here, Amazon has submitted a copy of the final purchase screen Plaintiff viewed prior to making his purchases, as well as the 2012 Conditions of Use which were hyperlinked on that page. In his complaint, Plaintiff clearly states that on two specific dates, in February and again in April 2013, he made purchases on Amazon.com's website using his credit card, for which he was charged and not refunded $37.83 and $20.66, respectively. (Compl. ¶¶ 15, 54-55, 75-76.) He states that the website did not disclose that 1 Day Diet contained sibutramine. (Compl. ¶¶ 52-53.) Plaintiff does not dispute that documents submitted by Amazon are the Conditions of Use that were, in fact, in effect at the time that he made his purchases, nor does he dispute that the Amazon website displayed the Conditions of Use in the manner described above. In considering the Rule 12(b)(6) motion, the Court considers the Conditions of Use as "documents either in plaintiff[']s possession or of which plaintiff[] had knowledge and relied on in bringing suit." *Id.;*

8

*see also Schnall v. Marine Midland Bank*, 225 F.3d 263, 266 (2d Cir. 2000) (explaining, in case

in which plaintiff brought a putative class action under various federal lending laws arising out

of his contract with the bank defendant, that although "[o]rdinarily our consideration [on a Rule

12(b)(6)] is limited to the face of the complaint and documents attached to the complaint or

incorporated by reference, ... here we may also consult [the plaintiff's] Cardholder Agreement,

account history and monthly statements because they are integral to his claims and [plaintiff] had

notice of that information."); *Chambers v. Time Warner, Inc.*, 282 F.3d 147, 153-54 (2d Cir.

2002) (holding that district court properly considered thirteen contracts governing relationship

between musicians and recording companies submitted with defendants' motion to dismiss

because they were "integral" to the complaint, as plaintiffs relied on their terms and effect in

drafting their complaint); *Discover Grp., Inc. v. Lexmark Int'l, Inc.*, 333 F. Supp. 2d 78, 82-83

(E.D.N.Y. 2004) (explaining that "[w]hen a document is integral to the complaint, a plaintiff is

on notice that it might be considered by the court in a motion to dismiss," and plaintiff cannot

avoid consideration of the integral document by choosing not to attach it to the complaint); *see*

*also Cole v. Pearson Educ., Inc.*, No. 10 CIV. 7523 JFK RLE, 2011 WL 4483760, at *1

(S.D.N.Y. Sept. 28, 2011).  No other "materials that are unattached or unincorporated to the

complaint nor unsupported factual allegations in legal memoranda, will be considered." *Citadel*

*Mgmt., Inc. v. Telesis Trust, Inc.*, 123 F. Supp. 2d 133, 147 (S.D.N.Y. 2000).[3]

---

[3] Alternatively, the Court construes Amazon's motion as a motion to dismiss the
Complaint under Rule 12(b)(3) for improper venue, as it would in a case involving a binding
forum selection clause.  *See Orlander v. Staples, Inc.*, No. 13 CIV. 703 NRB, 2014 WL
2933152, at *3 (S.D.N.Y. June 30, 2014) (considering motion to dismiss pursuant to a binding
arbitration clause in defendant's terms and conditions of sale under Rule 12(b)(3) because "'[a]n
arbitration clause is merely a specialized type of forum selection clause'") (quoting *Roby v.*
*Corp. of Lloyd's*, 996 F.2d 1353, 1363 n.2 (2d Cir. 1993)); *TradeComet.com*, 647 F.3d at 478 (A
motion to dismiss pursuant to a forum selection clause is appropriately considered under, *inter*

### B.  Choice of Law

The Federal Arbitration Act (the "FAA") creates a "body of federal substantive law of arbitrability" applicable to arbitration agreements. *Alliance Bernstein Inv. Research & Mgmt., Inc. v. Schaffran*, 445 F.3d 121, 125 (2d Cir. 2006) (quoting *Moses H. Cone Mem'l Hosp. v. Mercury Const. Corp.*, 460 U.S. 1, 24 (1983)).  Whether the parties agreed to arbitrate a certain matter is governed by state-law principles regarding contract formation. *Alliance Bernstein*, 445 F.3d at 125 ("[C]ourts generally look to state law for guidance as they seek to ascertain the parties' intent.").  Here, the parties agree that "Washington law … is controlling." (Pl.'s Opp'n Br. at 3-4 ("Washington state law applies"); Def. Reply Br. at 1 (same)).

### C.  Are Plaintiff's Claims Subject to Mandatory Arbitration on an Individual Basis?

In enacting the FAA, Congress intended to "counteract an historic judicial hostility toward arbitration, which often trumped the parties' clear intentions." *Schnabel v. Trilegiant Corp.*, No. 11-1311-CV, 2012 WL 3871366, at *6 (2d Cir. Sept. 7, 2012) (citing *Allied–Bruce Terminix Cos., Inc. v. Dobson*, 513 U.S. 265, 272 (1995)).  "[T]he FAA[, which] was designed to promote arbitration," *AT&T Mobility LLC v. Concepcion*, 131 S. Ct. 1740, 1749 (2011), "embodies the national policy favoring arbitration and places arbitration agreements on equal footing with all other contracts," *Buckeye Check Cashing, Inc. v. Cardegna*, 546 U.S. 440, 443 (2006).  Indeed, the Second Circuit has noted that "it is difficult to overstate the strong federal policy in favor of arbitration," and has observed that it is a policy that the Court has "often and emphatically applied." *Arciniaga v. Gen. Motors Corp.*, 460 F.3d 231, 234 (2d Cir. 2006) (internal quotation marks and citation omitted).  The Second Circuit has cautioned, however, that

---

*alia*, Rule 12(b)(3)).  The Court is permitted to consider facts outside of the pleadings on a Rule 12(b)(3) motion. *Zaltz*, 952 F. Supp. 2d at 447.

"emphatic application does not amount to automatic application." *Ragone v. Atl. Video at Manhattan Ctr.*, 595 F.3d 115, 121 (2d Cir. 2010). The FAA provides that an arbitration agreement "shall be valid, irrevocable, and enforceable, save upon such grounds as exist at law or in equity for the revocation of any contract." 9 U.S.C. § 2. In other words, the FAA "does not require parties to arbitrate when they have not agreed to do so." *Volt Info. Scis., Inc. v. Bd. of Trs. of Leland Stanford Jr. Univ.*, 489 U.S. 468, 478 (1989).[4]

Here, Amazon attempts to enforce the mandatory arbitration provision and class action waiver contained in its 2012 Conditions of Use, which was in effect at the time that Plaintiff made the purchases at issue in this litigation. Plaintiff does not dispute that the 2012 Conditions of Use contain a mandatory arbitration provision and class action waiver, but asserts that the terms of 2012 Conditions of Use are not enforceable against him because he did not manifest his intent to be bound by those terms. Amazon asserts that a valid contract was formed when Plaintiff, prior to executing his purchases, viewed a final checkout screen which stated, as the first line of text under a bold "Review your order" caption, that: "By placing your order, you agree to Amazon.com's privacy notice and conditions of use." The words "conditions of use" were displayed in blue font and hyperlinked to the Conditions of Use that were in effect at the time of the purchases. To place his orders, Plaintiff had to navigate past this screen by clicking a square icon below and to the right of this disclaimer, which states: "Place your order." Thus, the question is whether displaying a blue hyperlink to the current Conditions of Use on the top of the final checkout page, along with a conspicuous warning that: "By placing your order, you agree to

---

[4] "[W]hile doubts concerning the scope of an arbitration clause should be resolved in favor of arbitration, the presumption does not apply to disputes concerning whether an agreement to arbitrate has been made." *Applied Energetics, Inc. v. NewOak Capital Mkts., LLC*, 645 F.3d 522, 526 (2d Cir. 2011); *see also Goldman, Sachs & Co. v. Golden Empire Sch. Fin. Auth.*, 764 F.3d 210, 215 (2d Cir. 2014).

Amazon.com's … conditions of use," is sufficient to incorporate the terms of the Conditions of Use into the purchase agreement. This Court holds that, for the following reasons, it is.

The parties agree that the question of whether they have contractually bound themselves to arbitrate is governed by Washington state law. "It is a basic tenet of [Washington] contract law … that in order to be binding, a contract requires a 'meeting of the minds' and 'a manifestation of mutual assent.'" *Kwan v. Clearwire Corp.*, No. C09-1392 JLR, 2012 WL 32380, at *6 (W.D. Wash. Jan. 3, 2012) (citations omitted). "The making of contracts over the internet 'has not fundamentally changed the principles of contract law.'" *Id.* (quoting *Hines v. Overstock.com, Inc.*, 668 F. Supp. 2d 362, 366 (E.D.N.Y. 2009) (quoting *Register.com, Inc. v. Verio*, 356 F.3d 393, 403 (2d Cir. 2004)).[5] There are two primary means of forming contracts on the internet: (1) "clickwrap" agreements, "in which website users typically click an 'I agree' box after being presented with a list of terms and conditions of use," and (2) "browsewrap" agreements, in which "the terms and conditions of use for a website or other downloadable product are posted on the website typically as a hyperlink at the bottom of the screen." *Hines*, 668 F. Supp. 2d at 366. Under Washington law, "[s]ubjective evidence, including evidence that a party did not read the contract to which she manifested assent, is not relevant." *See Spam Arrest*, 2013 WL 4675919, at *8.

In *Kwan*, the only relevant case applying Washington law of which this Court is aware, the District Court for the Western District of Washington relied heavily on the Second Circuit Court of Appeals' "seminal decision" in *Specht v. Netscape Comm'ns Corp.*, in finding that a

---

[5] *Spam Arrest, LLC v. Replacements, Ltd.*, No. C12-481RAJ, 2013 WL 4675919, at *8 n.10 (W.D. Wash. Aug. 29, 2013) ("So far as the court is aware, only one court has applied Washington law to these online contracts. *Kwan* … [and n]either the *Kwan* decision nor any other authority of which the court is aware suggests that Washington law applies differently to online contracts.").

12

website user did not assent to be bound to the defendant's terms of use, which included a mandatory arbitration clause, because, *inter alia*, the terms of use were buried two or three clicks into the defendant's website. *Kwan*, 2012 WL 32380, at *7-9 (citing *Specht v. Netscape Comm'ns Corp.*, 306 F.3d 17 (2d Cir. 2002) (Sotomayor, J.)). The *Kwan* court applied the test set out in *Specht*, which asks, "[i]n ruling upon the validity of browsewrap agreements, … whether a website user has actual or constructive notice of the terms and conditions prior to using the website or other product." *Id.* at *7. In *Specht*, the Second Circuit held that internet users did not have reasonable notice of the terms in an online browsewrap agreement and therefore did not assent to the agreement, because there was no visible indication that downloading the defendant's software meant that the user agreed to any terms or conditions, where the only reference to the terms was located in text visible only if the user scrolled down to the next screen, then clicked on a hyperlink to a new webpage, and then clicked on another hyperlink. *Specht*, 306 F.3d at 31-35. The *Kwan* Court found that, as in *Specht*, in the case before it, the terms of use were not sufficiently conspicuous because the defendant's email communication did not mention the terms of use until the third page of the email and did not directly hyperlink to the terms of use. *Kwan*, 2012 WL 32380, at *9.

Here, Amazon's 2012 Conditions of Use agreement is a hybrid between a clickwrap and a browsewrap agreement. While the Conditions of Use are only available by navigating through a hyperlink, like a browsewrap agreement, a purchaser using Amazon's website could only place his or her order after viewing a conspicuous hyperlink to the current Conditions of Use and agreeing to make his purchase subject to those conditions. Additionally, a purchaser cannot make purchases on Amazon.com without first signing-up for an account, and in that process, expressly assenting to be bound (in a clickwrap agreement) to the terms of Conditions of Use,

13

which are subject to change.  Recently, in *Nguyen v. Barnes & Noble Inc.*, the Ninth Circuit

Court of Appeals explained that "[c]ourts have … been more willing to find the requisite notice

for constructive assent where the browsewrap agreement resembles a clickwrap agreement —

that is, where the user is required to affirmatively acknowledge the agreement before proceeding

with use of the website."  763 F.3d 1171, 1176-77 (9th Cir. 2014) (applying New York law).

The Ninth Circuit explained that in determining "whether the website puts a reasonably prudent

user on inquiry notice of the terms of the contract … depends on the design and content of the

website and the agreement's webpage." *Id.*  "Where the link to a website's terms of use is buried

at the bottom of the page or tucked away in obscure corners of the website where users are

unlikely to see it, courts have refused to enforce the browsewrap agreement," however "where

the website contains an explicit textual notice that continued use will act as a manifestation of the

user's intent to be bound, courts have been more amenable to enforcing browsewrap

agreements." *Id.*  "In short, the conspicuousness and placement of the 'Terms of Use' hyperlink,

other notices given to users of the terms of use, and the website's general design all contribute to

whether a reasonably prudent user would have inquiry notice of a browsewrap agreement."  *Id.*

Upon review of Amazon's initial sign-up page and final checkout page, this Court finds

that Plaintiff was, at a minimum, on inquiry notice of the current terms of the Conditions of Use

when making his purchases.  First, he expressly agreed, when he signed up for an account with

Amazon.com, to be bound by the terms of the Conditions of Use, and indicated that, *inter alia*,

he understood that the terms of the Conditions of Use were subject to change.  Second, he was

put on inquiry notice of the current terms each time he made a purchase, as a conspicuous

hyperlink to the current Conditions of Use was "presented to and agreed to by … Plaintiff[], each

and every time [he] made a purchase." *Ekin v. Amazon Services, LLC*, Case No. 2:14-cv-00244-

14

JCC, Dkt. No. 43, slip op. at 7-8 (W.D. Wash. Dec. 10, 2014).  Given (1) the conspicuous

placement of the hyperlink to the current Conditions of Use on the checkout page, (2) the express

warning at checkout that his purchases were subject to the terms of the current Conditions of

Use, and (3) the fact that he expressly agreed, when signing-up for an Amazon.com account, to

be bound by the terms of the Conditions of Use (including a provision notifying him that the

conditions are subject to change), this Court concludes that Plaintiff assented, each time he made

a purchase on Amazon.com, to be bound to the terms of the then-current Conditions of Use.[6]

Thus, he is bound to the mandatory arbitration clause and class action waiver contained in the

2012 Conditions of Use.[7]

---

[6] *See Fteja*, 841 F. Supp. 2d at 838-39 (explaining that "Facebook's Terms of Use are
somewhat like a browsewrap agreement in that the terms are only visible via a hyperlink, but
also somewhat like a clickwrap agreement in that the user must do something else—click "Sign
Up"—to assent to the hyperlinked terms" and enforcing terms of use … where "the consumer is
prompted to examine terms of sale that are located somewhere else" and warned that by clicking,
he is manifesting assent to those terms.); *Hubbert v. Dell Corporation*, 359 Ill. App. 3d 976, 982-
84 (Ill. App. Ct. 2005) (enforcing terms of an online contract where plaintiffs, to make their
purchases, viewed a page stating that the 'Terms and Conditions of Sale' were accessible by
clicking on a blue hyperlink," because "[t]he blue hyperlinks ... should be treated the same as a
multipage written paper contract" which "simply take[] a person to another page of the contract,"
and provided plaintiffs with sufficient "notice that there were terms and conditions attached to
the purchase and that it would be wise to find out what the terms and conditions were before
making a purchase."); *Zaltz*, 952 F. Supp. 2d at 452-54 (finding that "plaintiff assented to
JDate.com's Terms and Conditions of Service" when registering for a website, where she viewed
a page including a prominent hyperlink to the Terms and Conditions of Service and clicked a
button indicating that the agreed to those terms).

[7] The Conditions of Use that Plaintiff contends apply in this case, the 2008 Conditions of
Use, contain a mandatory forum selection clause which states, in relevant part, that "[a]ny
dispute relating in any way to your visit to Amazon.com ... shall be adjudicated in any state or
federal court in King County, Washington, and *you consent to exclusive jurisdiction and venue
in such courts*." (Duncan Decl., Ex. C) (emphasis added).  In its reply, Amazon does not raise
the mandatory forum selection clause, but instead argues that the 2012 Conditions of Use (which
do not contain a similar provision) are applicable in this case. Because the Court concludes that
the 2012 Conditions of Use apply, the Court does not address the significance of the forum
selection clause in the 2008 agreement.

15

### D.  *Are Plaintiff's Challenges to the Enforceability of the Conditions of Use Subject to Mandatory Arbitration on an Individual Basis?*

Plaintiff argues that he cannot be bound to the terms of the Conditions of Use for two additional reasons.  First, he argues that the 2012 Conditions of Use lack mutuality and are illusory because Amazon reserved the right to change its terms at any time.  Second, he argues that any contract relating to the sale of the 1 Day Diet product is void as an illegal contract because Amazon could not lawfully sell any product containing sibutramine without a prescription.

Challenges to the validity of arbitration agreements can be divided into two types:  Those that "challenge[ ] specifically the validity of the agreement to arbitrate" and those that "challenge[ ] the contract as a whole, either on a ground that directly affects the entire agreement (*e.g.,* the agreement was fraudulently induced), or on the ground that the illegality of one of the contract's provisions renders the whole contract invalid." *Buckeye*, 546 U.S. at 444.  While "[g]enerally applicable contract defenses, such as fraud, duress, or unconscionability, may be applied to invalidate arbitration agreements," *Doctor's Assocs., Inc. v. Casarotto*, 517 U.S. 681, 687 (1996), the FAA limits a district court's role to determining threshold "[q]uestions of arbitrability," *i.e.*, determining whether a valid arbitration agreement exists, and whether the agreement encompasses the disputes at issue.  *Republic of Ecuador v. Chevron Corp.*, 638 F.3d 384, 393 (2d Cir. 2011).  "[A] challenge to the validity of the contract as a whole, and not specifically to the arbitration clause, must go to the arbitrator." *Buckeye*, 546 U.S. at 449.

"Plaintiffs' argument that the contract is illusory, and thus the arbitration clause non-binding, is not a matter for this Court to decide." *Gilroy v. Seabourn Cruise Line, Ltd.*, No. C12-107Z, 2012 WL 1202343, at *5 (W.D. Wash. Apr. 10, 2012); *see also Damato v. Time Warner Cable, Inc.*, No. 13-CV-994 ARR RML, 2013 WL 3968765, at *6 (E.D.N.Y. July 31, 2013)

16

(observing that "cases that apply the Supreme Court's precedents ... overwhelmingly reach the conclusion that the issue of illusoriness of the whole contract must be resolved by the arbitrator").[8]   Rather, illusoriness is an issue reserved for the arbitrator.  Likewise, Plaintiff's challenge that the entire purchase agreement for the purchase of the 1 Day Diet product is void *ab initio* as an illegal contract is a challenge to the contract as a whole and must go to the arbitrator.  *Buckeye*, 546 U.S. at 443-46 (finding challenge that agreement containing an arbitration clause was "illegal and void *ab initio*" because it "violated various ... lending and consumer-protection laws, rendering it criminal on its face, ... challenge[s] the Agreement, but not specifically its arbitration provisions, ... [and] should therefore be considered by an arbitrator, not a court.").  Accordingly, Amazon's motion to dismiss pursuant to the mandatory arbitration clause is granted.  Plaintiff may only proceed on these claims in arbitration on an individual basis

## II.   **Plaintiff's Motion for a Preliminary Injunction**

In a separate motion, Plaintiff asks this Court to grant the following injunctive relief prior to sending the case the arbitration:

A.  Requiring Amazon to comply with the 'special packaging' rules promulgated by the Consumer Product Safety Commission;

B.  Preliminarily enjoining Amazon from further distributing any weight loss products that contain sibutramine; and

---

[8] Plaintiff relies on *In re Zappos.com, Inc. Customer Data Sec. Breach Litig.*, 893 F. Supp. 2d 1058, 1065 (D.Nev. 2012).  However, as the *Damato* court explained, *In re Zappos.com* is not persuasive because the decision "did not consider any of the controlling [Supreme Court] precedent on the question of who should adjudicate the illusoriness of the contract."  2013 WL 3968765, at *5.  "More compelling" are those cases that conclude, after considering binding precedent, that the illusoriness of a whole contract is an issue reserved for the arbitrator. *See id.* at *5-6.

> C.   Providing a court-approved remedial notice to all consumers to whom Amazon sold products containing sibutramine, and post the same notice conspicuously on its website.

(Pl. Br. at 23-24.)  Plaintiff asserts that he is entitled to such relief under traditional standards for preliminary injunctive relief and under standards applicable to injunctions under the Consumer Product Safety Act, (the "CPSA"), 15 U.S.C.A. § 2051, *et seq.*

## A.   *This Court May Grant a Preliminary Injunction in a Case Bound for Arbitration*

It is well-settled in this Circuit that district courts generally "should consider the merits of a requested preliminary injunction even where the validity of the underlying claims will be determined in arbitration." *Am. Exp. Fin. Advisors Inc. v. Thorley*, 147 F.3d 229, 231 (2d Cir. 1998) (citing *Blumenthal v. Merrill Lynch, Pierce, Fenner & Smith, Inc.*, 910 F.2d 1049 (2d Cir. 1990)).  Neither "the expectation of speedy arbitration … [nor] the pro-arbitration policy manifested in the FAA" "absolve[s] the district court of its responsibility to decide requests for preliminary injunctions on their merits." *Thorley*, 147 F.3d at 231.  The rationale underpinning the Second Circuit's directive is that "[a]rbitration can become a 'hollow formality' if parties are able to alter irreversibly the status quo before the arbitrators are able to render a decision in the dispute." *Blumenthal*, 910 F.2d at 1053-54.  "A district court must ensure that the parties get what they bargained for—a meaningful arbitration of the dispute … [and t]he issuance of an injunction to preserve the status quo pending arbitration fulfills the court's obligation under the FAA to enforce a valid agreement to arbitrate." *Id.*

Here, Plaintiff's requested injunctive relief aims to change, rather than preserve, the status quo during the pendency of the arbitration.  In its opposition, Amazon argues that this Court is not empowered to grant a so-called mandatory preliminary injunction in aid of arbitration, but rather, is only empowered to preserve the status quo in order to protect the

18

anticipated arbitration from becoming a "hollow formality." *Blumenthal*, 910 F.2d at 1053-54. This Court need not reach Amazon's argument because, as discussed below, Plaintiff cannot seek injunctive relief.

### B.   Standing to Pursue Injunctive Relief

Plaintiff asserts claims: (1) under the Consumer Product Safety Act, 15 U.S.C. § 2073, (2) for unjust enrichment, (3) for alleged violations of various state consumer protection laws, and (4) for breach of implied warranties under various state laws. (Compl. ¶¶ 86-175.) As a final remedy for the alleged violations of the Consumer Product Safety Act, Plaintiff seeks the same injunctive relief that he seeks in the instant motion for a preliminary injunction. On his common law and state law claims, he seeks declaratory relief, money damages, and attorney's fees on behalf of himself and a class of similarly-situated purchasers. Amazon does not dispute, at least at this juncture, that as a purchaser of the 1 Day Diet product, which allegedly contained undisclosed sibutramine, Plaintiff has standing to pursue appropriate money damages in connection with his purchases. However, Amazon contends that Plaintiff lacks standing to seek injunctive relief.

The jurisdiction of federal courts is limited, by Article III, Section 2 of the Constitution, "to the resolution of 'cases' and 'controversies.'" *Selevan v. N.Y. Thruway Auth.*, 584 F.3d 82, 88 (2d Cir. 2009). This limitation is "founded in concern about the proper—and properly limited— role of the courts in a democratic society." *Warth v. Seldin*, 422 U.S. 490, 498 (1975). "[W]hether the plaintiff has made out a 'case or controversy' between himself and the defendant ... is the threshold question in every federal case, determining the power of the court to entertain the suit." *Id.* "[T]o ensure that this 'bedrock' case-or-controversy requirement is met, courts require that plaintiffs establish their 'standing' as 'the proper part[ies] to bring' suit." *Selevan*,

19

584 F.3d at 89 (quoting *W.R. Huff Asset Mgmt. Co. v. Deloitte & Touche LLP*, 549 F.3d 100, 106

(2d Cir. 2008) (alteration in *Selevan*).

Although Plaintiff's motion is styled as a motion for *preliminary* injunctive relief –

suggesting more litigation will follow – the injunction sought is the only relief obtainable from

this Court, because Plaintiff's claims are bound for arbitration. Accordingly, the motion for a

preliminary injunction represents the entire "case or controversy" before this Court.

"Each element of standing must be supported in the same way as any other matter on

which the plaintiff bears the burden of proof, *i.e.,* with the manner and degree of evidence

required at the successive stages of the litigation." *Lujan v. Defenders of Wildlife*, 504 U.S. 555,

560-61 (1992); *see also Cacchillo v. Insmed, Inc.*, 638 F.3d 401, 404 (2d Cir. 2011). "When a

preliminary injunction is sought, a plaintiff's burden to demonstrate standing 'will normally be

no less than that required on a motion for summary judgment.'" *Cacchillo*, 638 F.3d at 404

(quoting *Lujan v. Nat'l Wildlife Fed'n*, 497 U.S. 871, 907 n.8 (1990)). "Accordingly, to establish

standing for a preliminary injunction, a plaintiff cannot rest on such mere allegations, as would

be appropriate at the pleading stage but must set forth by affidavit or other evidence specific

facts, which for purposes of the summary judgment motion will be taken to be true.'" *Id.*

(quoting *Lujan*, 504 U.S. at 561) (quotation marks and alterations omitted).

The "irreducible constitutional minimum" of standing requires a plaintiff to show that:

(1) he has suffered a concrete and particularized injury-in-fact which is actual or imminent, not

"conjectural or hypothetical," (2) the injury is fairly traceable to the defendant's allegedly

unlawful conduct, and (3) the injury will likely be redressed by the requested relief. *Lujan*, 504

U.S. at 560-61. "[A] plaintiff must demonstrate standing separately for each form of relief

20

sought." *Friends of the Earth, Inc. v. Laidlaw Envtl. Servs. (TOC), Inc.*, 528 U.S. 167, 185 (2000).

"[W]hen seeking prospective injunctive relief, the plaintiff must prove the likelihood of *future* or *continuing* harm." *Pungitore v. Barbera*, 506 F. App'x 40, 41 (2d Cir. 2012) (summary order, emphasis in original) (citing *City of Los Angeles v. Lyons*, 461 U.S. 95, 111 (1983)); *Robidoux v. Celani*, 987 F.2d 931, 938 (2d Cir. 1993) ("For a plaintiff to have standing to request injunctive or declaratory relief, the injury alleged must be capable of being redressed through injunctive relief 'at that moment[,' either because] … the defendant was engaging in the unlawful practice against the plaintiff at the time of the complaint … [or] there is a substantial likelihood that [plaintiff] will again be subjected to the allegedly unlawful policy in the future") (internal citations and quotation marks omitted). "Although a past wrong is relevant evidence as to whether there is a real and immediate threat of repeated injury, '[p]ast exposure to illegal conduct does not in itself show a present case or controversy regarding injunctive relief … if unaccompanied by any continuing, present adverse effects.'" *Spiro v. Healthport Technologies, LLC*, No. 14 CIV. 2921 PAE, 2014 WL 4277608, at *6-7 (S.D.N.Y. Aug. 29, 2014) (quoting *O'Shea v. Littleton*, 414 U.S. 488, 495–96 (1974)); *see also Deshawn E. by Charlotte E. v. Safir*, 156 F.3d 340, 344 (2d Cir. 1998) ("A plaintiff seeking injunctive or declaratory relief cannot rely on past injury to satisfy the injury requirement but must show a likelihood that he or she will be injured in the future."). Finally, an abstract injury is not enough; rather, "[t]he injury or threat of injury must be both 'real and immediate,' not 'conjectural' or 'hypothetical.'" *O'Shea*, 414 U.S. at 494.

In *City of Los Angeles v. Lyons*, the Supreme Court held that Lyons, who was placed in a chokehold by a police officer, did not have standing to seek a prospective preliminary injunction

21

barring police officers from indiscriminately using chokeholds.  The Court held that while Lyons

had standing to sue for compensatory damages, his past injury did not supply a predicate for

prospective equitable relief because he did not face a real and immediate threat of future injury.

*Lyons*, 461 U.S. at 105–106.  The Court held that a plaintiff seeking prospective injunctive relief

must demonstrate that he will be "wronged again."  *Id.* at 103 ("Absent a sufficient likelihood

that he will again be wronged in a similar way, Lyons is no more entitled to an injunction than

any other citizen of Los Angeles; and a federal court may not entertain a claim by any or all

citizens who no more than assert that certain practices of law enforcement officers are

unconstitutional.").

Relying on *Lyons*, in *Robidoux*, the Second Circuit held that plaintiffs who were currently

suffering as a result of the defendant's conduct could seek a preliminary injunction because their

alleged injury was "capable of being redressed through injunctive relief at that moment,"

however plaintiffs who were no longer suffering as a result of the defendant's conduct no longer

had standing to pursue prospective relief.  987 F.2d at 938; *see also Carver v. City of New York*,

621 F.3d 221, 228 (2d Cir. 2010) (finding plaintiff, a recipient of public assistance who alleged

his lottery winnings were unconstitutionally intercepted, lacked standing to pursue a claim for

injunctive relief because "[t]he odds of winning big in a lottery are often analogized to being hit

twice by lightning. And Carver does not even allege any intention to buy more lottery tickets [or

that he is still a recipient of public assistance]."); *Tomasino v. Estee Lauder Companies Inc.*, No.

13-CV-4692 ERK JMA, 2014 WL 4244329, at *2-3 (E.D.N.Y. Aug. 26, 2014) (finding that

plaintiff, who alleged she "remain[ed] a potential ... customer and [wa]s likely to be misled

again," failed to allege "a sufficient future injury to establish standing to assert her claims for

injunctive relief" because she did not allege that she was likely to purchase the products at issue

in the litigation again).[9]  Thus, a plaintiff lacks standing to seek injunctive relief if his injury is

not ongoing and he faces no threat of future injury.[10]

      Here, Plaintiff lacks standing to seek injunctive relief because, "even assuming that

plaintiff[] had adequately pled that [he] suffered a past injury redressable via a damages remedy,

[he] ha[s] failed to plead facts that would permit the plausible inference that [he is] in danger of

being 'wronged again.'"  *Spiro*, 2014 WL 4277608, at *7.  This is because, first and foremost, it

is undisputed that Amazon voluntarily took down all listings for the 1 Day Diet product from its

---

[9] *See also McNair v. Synapse Grp. Inc.*, 672 F.3d 213, 224 (3d Cir. 2012) (concluding that plaintiffs who did "not established any reasonable likelihood of future injury" because they were "no longer customers, ... have no cognizable interest in the prospective relief sought in the Complaint."); *Frankle v. Best Buy Stores, L.P.*, 609 F. Supp. 2d 841, 848 (D. Minn. 2009) (explaining that a former customer had no "standing to seek an injunction ... because she [was] no more likely than anyone else to be impacted"); *Goldstein v. Home Depot U.S.A., Inc.*, 609 F. Supp. 2d 1340, 1348 (N.D. Ga. 2009) (former customer who did not allege "that he plans in the future to purchase a Dryer from Defendant or that he plans in the future to have a Dryer installed by Defendant" lacked standing to pursue injunctive relief on behalf of a class of consumers who might be subjected to the allegedly illegal practice); *Dabish v. Infinitelabs, LLC*, No. 13-CV-2048 BTM DHB, 2014 WL 4658754, at *5-6 (S.D. Cal. Sept. 17, 2014) ("there is no likelihood that Plaintiff will purchase the Product in the future because, according to Plaintiff, it does not work. Therefore, there is no risk of future harm and no basis for injunctive relief.").

[10] Several courts have declined to follow *Lyons* in consumer protection cases. *See, e.g.*, *Delgado v. Ocwen Loan Servicing, LLC*, No. 13-CV-4427 NGG RML, 2014 WL 4773991, at *14 (E.D.N.Y. Sept. 24, 2014) (declining to follow *Lyons* on the grounds that "[f]inding that Plaintiffs have no federal standing to enjoin a deceptive practice once they become aware of the scheme [and cancel their subscriptions] would 'eviscerate the intent of the ... legislature in creating consumer protection statutes.'") (citations omitted); *Koehler v. Litehouse, Inc.*, No. 12–cv–4055–SI, 2012 WL 6217635, at *6 (N.D. Cal. Dec. 13, 2012) (rejecting argument that to have standing, plaintiff must allege he will purchase product again because "[t]o do otherwise would eviscerate the intent of the ... legislature in creating consumer protection statutes because it would effectively bar any consumer who avoids the offending product from seeking injunctive relief."); *Ackerman v. Coca-Cola Co.*, No. 09 CV 395 DLI RML, 2013 WL 7044866, at *15 n.23 (E.D.N.Y. July 18, 2013) (report and recommendation pending) (recommending that district court find plaintiff has standing to sue for prospective relief without showing future injury because to hold otherwise would eviscerate consumer protection laws) (collecting cases).  This Court declines to follow these cases because *Lyons* remains binding precedent.

23

website within 24 hours of the FDA's Public Notification regarding hidden sibutramine.

Moreover, Plaintiff does not allege that he intends to purchase the 1 Day Diet again in the future,

nor is he suffering any ongoing injury as a result of his past purchases of 1 Day Diet.[11]

To the extent that Plaintiff seeks injunctive relief on behalf of a putative class of plaintiffs

– either a class of Amazon customers who also purchased the 1 Day Diet product, or those who

purchased or will purchase any other dietary supplements containing sibutramine – he lacks

standing to pursue such relief for two reasons.  First, he must personally have standing to secure

prospective relief on behalf of a class, and for reasons already explained, he lacks such standing.

*Spiro*, 2014 WL 4277608, at *6-7 ("[T]he named plaintiffs in [a class] action must themselves

have standing to seek injunctive relief.") (quoting *Dodge v. Cnty. of Orange*, 103 F. App'x 688,

690 (2d Cir. 2004) (summary order)); *see also Simon v. E. Ky. Welfare Rights Org.*, 426 U.S. 26,

40 n.20 (1976) ("That a suit may be a class action ... adds nothing to the question of standing, for

even named plaintiffs who represent a class must allege and show that they personally have been

injured, not that injury has been suffered by other, unidentified members of the class to which

they belong and which they purport to represent.") (internal quotation marks omitted); *Cent.*

*States Se. & Sw. Areas Health & Welfare Fund v. Merck–Medco Managed Care, LLC*, 433 F.3d

181, 199 (2d Cir. 2005) ("The Supreme Court has held that if none of the named plaintiffs

purporting to represent a class establishes the requisite of a case or controversy with the

defendant, none may seek relief on behalf of himself or any other member of the class.") (citing

---

[11] Even if Plaintiff had demonstrated an ongoing injury or sufficient risk of future injury, he would lack standing under the redressability prong of the traditional standing test because his alleged injury – purchasing the 1 Day Diet product unaware that it contained undisclosed sibutramine – would not be redressed by the sought injunction, which seeks to impose packaging requirements, enjoin future sales, and notify other past purchasers of dietary supplements. *See Sprint Commc'ns Co. v. APCC Servs., Inc.*, 554 U.S. 269, 273-74 (2008) (redressability requires that it be "likely and not merely speculative that the plaintiff's injury will be remedied by the relief plaintiff seeks in bringing suit" (citations and internal quotation marks omitted)).

24

*O'Shea*, 414 U.S. at 494) (internal quotation marks omitted). Second, he cannot assert claims on

behalf of unnamed class members who purchased or will purchase dietary supplements other

than the 1 Day Diet product. *Tomasino*, 2014 WL 4244329, at *2-3 ("[T]he fact that unknowing

class members might purchase ... products based on the defendants' allegedly unlawful

[conduct] does not establish standing.") (quotation marks and citations omitted); *Warth*, 422 U.S.

at 502 ("Petitioners must allege and show that they personally have been injured, not that injury

has been suffered by other, unidentified members of the class to which they belong and which

they purport to represent."); *Allee v. Medrano*, 416 U.S. 802, 828-29 (1974) ("[A] named

plaintiff cannot acquire standing to sue by bringing his action on behalf of others who suffered

injury which would have afforded them standing had they been named plaintiffs; it bears

repeating that a person cannot predicate standing on injury which he does not share. Standing

cannot be acquired through the back door of a class action.") (Burger, C.J., concurring in part,

dissenting in part).

   Accordingly, Plaintiff's motion for injunctive relief, whether on an individual basis or on

a class basis, is denied for lack of standing.

### C. *Preliminary Statutory Injunction Pursuant to Consumer Product Safety Act*

   The CPSA provides that "[a]ny interested person ... may bring an action ... to enforce a

consumer product safety rule ... and to obtain appropriate injunctive relief." 15 U.S.C.A. §

2073(a).[12]  Plaintiff contends that even if he cannot prevail under traditional standards applicable

to preliminary injunctions, he can obtain sweeping injunctive relief – on an individual basis –

under the Consumer Product Safety Act, which expressly provides that "interested parties" may

_____

   [12] Whether Plaintiff can ultimately secure injunctive relief under the CPSA is a merits
question reserved for the arbitrator. The question here is whether this Court should grant
*preliminary* injunctive relief under the CPSA prior to dismissing the matter in favor of
arbitration.

seek injunctive relief. He contends that the statute gives this Court authority to grant a preliminary injunction under a less burdensome standard than is typically applied to traditional motions for preliminary relief. However, even assuming, *arguendo*, that Plaintiff has standing as an "interested" party to seek a preliminary injunction under the CPSA, the CPSA has no application here.

Plaintiff asserts that "'[w]hen an injunction is expressly authorized by statute, the standard preliminary injunction test is not applied. Instead, the Court must look to the 'statutory conditions for injunctive relief,' and may issue a preliminary injunction if those conditions are met.'" *Barkley v. United Homes, LLC*, 848 F. Supp. 2d 248, 273-75 (E.D.N.Y. 2012) (quoting *United States v. Broccolo*, No. 06–CV–2812, 2006 WL 3690648, at *1 (S.D.N.Y. Dec. 13, 2006) (quoting *SEC v. Mgmt. Dynamics, Inc.*, 515 F.2d 801, 808 (2d Cir. 1975)). In *Barkley*, the district court found that the plaintiff's failure to prove the traditional requirements for equitable relief, such as irreparable damage "[wa]s plainly irrelevant. Where an injunction is authorized by statute it is enough if the statutory conditions are satisfied." *Id.* (quoting *Henderson v. Burd*, 133 F.2d 515, 517 (2d Cir. 1943)). The rule that Plaintiff seeks to invoke, first recognized in *SEC v. Mgmt. Dynamics, Inc.*, excuses government agencies from making a showing of irreparable harm for issuance of an injunction. 515 F.2d 801. *See City of New York v. Golden Feather Smoke Shop, Inc.*, 597 F.3d 115, 120 (2d Cir. 2010) ("In certain circumstances, generally when the party seeks a statutory injunction, we have dispensed with the requirement of showing irreparable harm, and instead employ a presumption of irreparable harm based on a statutory violation."). Even assuming, *arguendo*, that this rule applies to private plaintiffs, a Plaintiff seeking to invoke the relaxed standard applied to statutory injunctions is not excused from making a showing of a likelihood of success on the merits. *See Koch v. Greenberg*, No. 07 CIV. 9600 JPO, 2014 WL

26

1284492, at *25 (S.D.N.Y. Mar. 31, 2014) (explaining that "while the *Barkley* case suggests that

the[] traditional principles of equity have no place when examining the propriety of injunctions

sought by private plaintiffs ..., other cases ... suggest that while government entities need not

meet the traditional equitable requirements in seeking injunctions, private plaintiffs are ordinarily

afforded no such dispensation"). In *Barkley*, for example, the "plaintiffs ha[d] already

established at trial that the ... Defendants ... engaged in deceptive acts or practices ... in

violation of [the applicable statute]." The court found that "[h]aving satisfied the 'statutory

conditions for injunctive relief,' the court [could] issue the injunction against defendants." *Id.*;

*see also Broccolo*, 2006 WL 3690648, at *2 (explaining that "if the Government establishes a

violation of [the statute], the Court may issue a preliminary injunction"). Here, Plaintiff cannot

secure a preliminary injunction under the CPSA because he cannot demonstrate that he is likely

to prevail on the merits of his CPSA claim.

The CPSA allows for private enforcement of "consumer product safety rule[s]." 15

U.S.C.A. § 2073(a). The term "consumer product safety rule" is defined to mean "a consumer

products safety standard ... declaring a consumer product a banned hazardous product." 15

U.S.C.A. § 2052(a)(6). A "consumer product," in turn, is defined as "any article, or component

part thereof, produced or distributed (i) for sale to a consumer for use in or around a permanent

or temporary household or residence, a school, in recreation, or otherwise, or (ii) for the personal

use, consumption or enjoyment of a consumer in or around a permanent or temporary household

or residence, a school, in recreation, or otherwise." 15 U.S.C.A. § 2052(a)(5). However, the

statute expressly excludes, from the definition of "consumer product" both "drugs, devices, or

cosmetics," and "food," as defined by, *inter alia*, subsections 201(f), (g), (h), and (i) of the

Federal Food, Drug, and Cosmetic Act, 21 U.S.C.A. § 321(f), (g), (h), and (i). 15 U.S.C.A. §

2052(a)(5)(H) and (I).  Plaintiff contends that the 1 Day Diet product was not marketed as a drug

containing sibutramine, but as a dietary supplement, and that the term "dietary supplement" is

separately defined in subsection (ff) the Federal Food, Drug, and Cosmetic Act.  21 U.S.C.A. §

321(ff).  Thus, Plaintiff contends that, as a dietary supplement, the 1 Day Diet product is not

exempt from the definition of "consumer product," and is subject to regulation under the CPSA,

including through a private enforcement action.

Plaintiff next alleges that the specific "consumer product safety rule" that Amazon

violated by selling 1 Day Diet is contained in the Poison Prevention Packaging Act ("PPPA"), 16

C.F.R. § 1700.14, which requires special packaging child-proof for certain products, including

"controlled drugs" and "prescription drugs" – which Plaintiff contends 1 Day Diet is, as a

product containing sibutramine.  16 C.F.R. § 1700.14(a)(4) and (10).  The PPPA does not apply

to "dietary supplements" unless they contain "an equivalent of 250 mg or more of elemental

iron," which Plaintiff does not allege that 1 Day Diet contains.  16 C.F.R. § 1700.14(a)(13).

Plaintiff cannot have it both ways.  Either 1 Day Diet is a "drug," containing sibutramine,

thus not a "consumer product" under the CPSA – in which case, Plaintiff may be correct that the

PPPA requires special packaging, but Plaintiff has no private right of action to enforce the rule –

or it is a "dietary supplement" under the CPSA – in which case it is not a drug under the PPSA

and Plaintiff has cited no "consumer product safety rule" that he can enforce under the CPSA.

Accordingly, because Plaintiff has failed to demonstrate that he is likely to prevail on the merits

of his CPSA claim, his motion for a preliminary injunction pursuant to the CPSA is denied.

## CONCLUSION

Amazon's motion to dismiss is granted because all of Plaintiff's claims are subject to

mandatory arbitration.  Plaintiff's motion for a preliminary injunction is denied because (1)

28

Plaintiff lacks standing to pursue a traditional preliminary injunction and cannot invoke the CPSA because it has no application in this case.  The Clerk of Court is respectfully directed to close the case.

**SO ORDERED.**

/s/ Sandra L Townes
SANDRA L. TOWNES
United States District Judge

Dated: February 2, 2015
      Brooklyn, New York

29