UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK

-------------------------------------------------- X

DEAN NICOSIA, on behalf of himself and
all others similarly situated,

                Plaintiff,

    - against -

AMAZON.COM, INC.,

              Defendant.

-------------------------------------------------- X

:
:
:
:
:
:
:
:
:
:
:
:
:
:

Case No. 14-CV-4513-SLT-LB

**ORAL ARGUMENT REQUESTED**


## REPLY MEMORANDUM OF LAW IN FURTHER SUPPORT OF DEFENDANT AMAZON.COM, INC.'S MOTION TO COMPEL ARBITRATION

Gregory T. Parks (*admitted pro hac vice*)
Jacqueline C. Gorbey (*admitted pro hac vice*)
MORGAN, LEWIS & BOCKIUS LLP
1701 Market Street
Philadelphia, PA  19103-2921
(215) 963-5000

-and-

Regina Schaffer-Goldman
MORGAN, LEWIS & BOCKIUS LLP
101 Park Avenue
New York, NY 10178
(212) 309-6000

*Attorneys for Defendant Amazon.com, Inc.*

## TABLE OF CONTENTS

**Page**

I.     INTRODUCTION ................................................................................................. 1

II.    ARGUMENT ...................................................................................................... 1

    A.    Plaintiff Had Actual, Constructive, and/or Inquiry Notice of the Conditions of Use ...................................................................... 1

    B.    Plaintiff's Agents Had Authority to Accept the Conditions of Use on His Behalf ......................................................................................... 2

    C.    Plaintiff Is Bound By the Terms of the Nicosias' Prime Account........................ 4

    D.    The Conditions of Use in Place When Plaintiff and His Wife Opened Their Accounts Do Not Obviate the Need to Arbitrate ........................................ 5

    E.    Amazon Submitted Admissible Evidence of Plaintiff's Agreement to Arbitrate ...................................................................................... 5

    F.    The Arbitrator Must Decide Questions of Validity of the Conditions of Use ...................................................................................... 7

    G.    Amazon Has Not Waived Its Right to Arbitrate .................................................... 9

    H.    Plaintiff's Other Waiver Arguments Are Meritless ............................................ 11

III.    CONCLUSION................................................................................................ 12

## <u>TABLE OF AUTHORITIES</u>

**Page(s)**

CASES

*5381 Partners LLC v. Shareasale.com, Inc.*,
   No. 12-cv-4263, 2013 WL 5328324 (E.D.N.Y. Sept. 23, 2013) ..............................................6

*Arrigo v. Blue Fish Commodities, Inc.*,
   408 F. App'x 480 (2d Cir. 2011) ...........................................................................................8

*Bassett v. Elec. Arts, Inc.*,
   93 F. Supp. 3d 95 (E.D.N.Y. 2015) ......................................................................................8

*Bazemore v. Jefferson Capital Sys., LLC*,
   827 F.3d 1325 (11th Cir. 2016) .............................................................................................6

*Brownstone Inv. Grp., LLC v. Levey*,
   514 F. Supp. 2d 536 (S.D.N.Y. 2007)..................................................................................11

*Buckeye Check Cashing, Inc. v. Cardegna*,
   546 U.S. 440 (2006).............................................................................................................7, 8

*Chehebar v. Oak Fin. Grp., Inc.*,
   No. 14-cv-2982, 2017 WL 946292 (E.D.N.Y. Mar. 7, 2017)................................................9

*Ekin v. Amazon Servs., LLC*,
   84 F. Supp. 3d 1172 (W.D. Wash. 2014)..............................................................................5

*Estate of Hamilton v. City of N.Y.*,
   627 F.3d 50 (2d Cir. 2010)...................................................................................................12

*Fteja v. Facebook, Inc.*,
   841 F. Supp. 2d 829 (S.D.N.Y. 2012)...................................................................................4

*Garanti Finansal Kiralama A.S. v. Aqua Marine & Trading Inc.*,
   697 F.3d 59 (2d Cir. 2012)..................................................................................................11

*Giuffra v. Vantage Travel Serv., Inc.*,
   No. 13-cv-6880, 2015 WL 3457246 (S.D.N.Y. June 1, 2015) .............................................12

*Granite Rock Co. v. International Brotherhood Of Teamsters*,
   561 U.S. 287 (2010).............................................................................................................7, 8

*In re Crysen/Montenay Energy Co.*,
   226 F.3d 160 (2d Cir. 2000)................................................................................................10

**TABLE OF AUTHORITIES**
**(continued)**

Page(s)

*In re Online Travel Co.*,
   953 F. Supp. 2d 713 (N.D. Tex. 2013) ....................................................................6

*In re Zappos.com, Inc.*,
   893 F. Supp. 2d 1058 (D. Nev. 2012) ...................................................................1

*Jim Schumacher, LLC v. Spireon, Inc.*,
   No. 3:12-cv-625, 2015 WL 3949349 (E.D. Tenn. June 29, 2015) ...........................3

*JLM Indus., Inc. v. Stolt-Nielsen SA*,
   387 F.3d 163 (2d Cir. 2004)..................................................................................8

*Kearney v. Okemo Ltd. Liab. Co.*,
   No. 5:15-CV-00166, 2016 WL 4257459 (D. Vt. Aug. 11, 2016)...........................6

*Kindred Nursing Ctrs. Ltd. P'ship v. Clark*,
   137 S. Ct. 1421 (2017)...................................................................................1, 3

*Lapina v. Men Women N.Y. Model Mgmt. Inc.*,
   86 F. Supp. 3d 277 (S.D.N.Y. 2015)...................................................................8

*LG Elecs., Inc. v. Wi-Lan USA, Inc.*,
   623 F. App'x 568 (2d Cir. 2015) ........................................................................9

*Mahmoud Shaban & Sons Co. v. Mediterranean Shipping Co., S.A.*,
   No. 11-cv-6322, 2013 WL 5303761 (S.D.N.Y. Sept. 20, 2013) ......................10, 11

*Mayfield v. Asta Funding, Inc.*,
   95 F. Supp. 3d 685 (S.D.N.Y. 2015)...................................................................6

*Meyer v. Kalanick*,
   199 F. Supp. 3d 752 (S.D.N.Y. 2016)..................................................................1

*Mohammed v. Uber Techs., Inc.*,
   No. 16-cv-2537, 2017 WL 590289 (N.D. Ill. Feb. 14, 2017) ...............................3

*Motise v. America Online, Inc.*,
   346 F. Supp. 2d 563 (S.D.N.Y. 2004)...............................................................4, 5

*Murray v. UBS Sec., LLC*,
   No. 12-cv-5914, 2014 WL 285093 (S.D.N.Y. Jan. 27, 2014) .........................10, 11

*Nat'l Auto Lenders, Inc. v. SysLOCATE, Inc.*,
   686 F. Supp. 2d 1318 (S.D. Fla. 2010) ...............................................................3

*Oahn Nguyen Chung v. StudentCity.com, Inc.*,
   No. 10-cv-10943, 2013 WL 504757 (D. Mass. Feb. 12, 2013) ..............................3

**TABLE OF AUTHORITIES**
**(continued)**

**Page(s)**

*Reives v. Lumpkin*,
632 F. App'x 34 (2d Cir. 2016) ............................................................................12

*Rush v. Oppenheimer & Co.*,
779 F.2d 885 (2d Cir. 1985)................................................................................11

*Salameno v. Gogo Inc.*,
No. 16-cv-0487, 2016 WL 4005783 (E.D.N.Y. July 25, 2016)................................................2

*Sgouros v. TransUnion Corp.*,
817 F.3d 1029 (7th Cir. 2016) ............................................................................1

*Starke v. Gilt Groupe, Inc.*,
No. 13-cv-5497, 2014 WL 1652225 (S.D.N.Y. Apr. 24, 2014) ...............................................4

*Thyssen, Inc. v. Calypso Shipping Corp., S.A.*,
310 F.3d 102 (2d Cir. 2002)................................................................................10

*Zaltz v. JDate*,
952 F. Supp. 2d 439 (E.D.N.Y. 2013) ....................................................................6

I.      INTRODUCTION

The Second Circuit's decision in this case clearly directed that the core issue for this Court to determine is "constructive notice."  Plaintiff's Opposition[1] barely touches this issue, focusing instead on procedural and evidentiary arguments that get him nowhere.  But try as he might, Plaintiff cannot avoid the conclusion that he or those acting on his behalf had ample constructive notice of the arbitration clause in Amazon's Conditions of Use.  As the Supreme Court reiterated just last month, the Federal Arbitration Act reflects a federal policy in favor of arbitration which applies equally to contract formation and enforcement in the context of an agency relationship.  *See Kindred Nursing Ctrs. Ltd. P'ship v. Clark*, 137 S. Ct. 1421, 1428 (2017).  This Court should grant Amazon's motion to compel arbitration.

II.     ARGUMENT

A.      Plaintiff Had Actual, Constructive, and/or Inquiry Notice of the Conditions of Use

Plaintiff's few arguments on the issue of constructive notice are unavailing.  Plaintiff wrongly claims that the Second Circuit's decision ends the issue.  Nothing could be farther from the truth.  The Second Circuit looked at the limited record of Plaintiff's two purchases of 1 Day Diet and concluded that "reasonable minds could disagree" about whether Plaintiff had constructive notice of the arbitration clause at issue. (Second Cir. Op. at 34).  It specifically emphasized that "we do not hold there was no objective manifestation of mutual assent here" and noted that "factual questions remain as to the formation of the agreement to arbitrate." (*Id.* at 34-35 n.7).  The additional facts now before this Court compel the conclusion that Plaintiff is bound to arbitrate.[2]  Plaintiff and his agents *repeatedly* saw the link

---

[1] Cites to the "MTCA" are to Amazon's Memorandum of Law in Support of Its Motion to Compel Arbitration dated April 10, 2017. Cites to the "Opposition" or "Opp." are to Plaintiff's Memorandum in Opposition to Amazon.com, Inc.'s Motion to Compel Arbitration dated May 24, 2017. Cites to "Pls. Opp. to SUF" are to Plaintiff's Responses and Objections to Amazon's Local Rule 56.1 Statement of Materials Facts dated May 24, 2017.  All other capitalized terms used herein have the meanings ascribed to them in the MTCA and Amazon's SUF.

[2] Plaintiff's few cases on this point are inapplicable. In *Sgouros v. TransUnion Corp.*, 817 F.3d 1029, 1035 (7th Cir. 2016), the text at issue was "actively mislead[ing]."  In *Meyer v. Kalanick*, 199 F. Supp. 3d 752, 764 n.9 (S.D.N.Y. 2016) (appeal pending), Judge Rakoff actually cited Judge Townes's February 4, 2015 opinion and the order page at issue here as an example of a website that gave constructive notice. And in *In re Zappos.com, Inc.*, 893 F. Supp. 2d 1058, 1064 (D. Nev. 2012) the link was nowhere near anything the user would have seen.

to Amazon's Conditions of Use.  This invalidates Plaintiff's effort to distinguish Judge Weinstein's decision on similar facts in *Salameno v. Gogo Inc.*, No. 16-cv-0487, 2016 WL 4005783 (E.D.N.Y. July 25, 2016).  Plaintiff claims that unlike the plaintiff in *Salameno*, he is not a sophisticated online user.  (Opp. at 11 n.5). This ignores the undisputed fact that he placed repeated orders on Amazon and other websites.  More fundamentally, Judge Weinstein's decision in *Salameno* was driven by the fact that the plaintiffs "repeatedly" saw the link to the terms and conditions with an arbitration clause.  *Salameno*, 2016 WL 4005783, at *5.  That indisputably happened here as well, with the Plaintiff visiting the order page more than 50 times and his agents visiting it more than 500 times.  Indeed, the Second Circuit recognized that there is a "basis for imputing constructive knowledge on a *repeat consumer* who is alerted to terms of use after each purchase."  (Second Cir. Op. at 33 n.5).

Moreover, Plaintiff does not dispute that he had actual knowledge of Amazon's Conditions of Use and its arbitration clause through this lawsuit and continued to place orders.  He simply argues in a footnote that "he never clicked the hyperlink."  (Opp. at 12 n.8).  This ignores the fact that at that time, he had been served with formal notice, through process in this Court, that Amazon both had an arbitration clause in its Conditions of Use and was asserting that arbitration clause.  Yet Plaintiff continued to place at least 27 additional orders, as established by his own supplemental interrogatory responses.  (MTCA at 17 (citing SUF, ¶ 65).  That he never actually clicked on the hyperlink during that time or took the time to look at the Conditions of Use is irrelevant.  (*See* Second Cir. Op. at 20 ("to be bound, an internet user need not actually read the terms and conditions or click on a hyperlink that makes them available as long as [he] has notice of their existence.")).   Plaintiff does not – and cannot – dispute that the Conditions of Use apply retroactively.  Indeed, Amazon has demonstrated that its Conditions of Use are not limited to prospective disputes.  (MTCA at 18-19).

     **B.**    **Plaintiff's Agents Had Authority to Accept the Conditions of Use on His Behalf**

This Court must reject Plaintiff's efforts to evade the binding effect of the actions taken by his agents.  First, Plaintiff's own deposition testimony clearly evinces that he authorized these individuals to act for him.  (*See* MTCA at 17; SUF, ¶¶ 39, 68, 56, 111).  Accepting Amazon's Conditions of Use is

within the scope of those authorizations.  *See Oahn Nguyen Chung v. StudentCity.com, Inc.*, No. 10-cv-10943, 2013 WL 504757, at \*2-4 (D. Mass. Feb. 12, 2013) (holding parents had authorized daughter to make online payments and she was thus their agent and could bind parents to terms and conditions because "agreeing to the seller's terms and conditions are a normal part of making any purchase, especially an online purchase"); *see generally Kindred Nursing Centers*, 137 S. Ct. at 1424-29 (agents may enter into arbitration agreements that bind their principals).

Second, Plaintiff's agents had apparent authority to accept the Conditions of Use on Plaintiff's behalf.  Plaintiff objectively manifested to Amazon that individuals placing orders on his behalf had authorization to place those orders by allowing them to use credit cards and online accounts in his name to place purchases on Amazon.com.  He thereby agreed "to accept responsibility for all activities that occur under your account or password."  (MTCA at 2-3; SUF, ¶ 10).[3]

Third, Plaintiff's argument that "[e]ven assuming any agency relationship exists, it was *limited* to" the specific purchases his agents made fails.  (Opp. at 21-22).  The Conditions of Use are broad and extend to "*any dispute or claim* relating in any way to your use of any Amazon Service, or to any products or services sold or distributed by Amazon or through Amazon.com." (MTCA at 18, 22-23).

---

[3] *Jim Schumacher, LLC v. Spireon, Inc.*, No. 3:12-cv-625, 2015 WL 3949349 (E.D. Tenn. June 29, 2015) and *Nat'l Auto Lenders, Inc. v. SysLOCATE, Inc.*, 686 F. Supp. 2d 1318 (S.D. Fla. 2010) are inapplicable.  In *Schumacher*, the court could not find as a matter of law that anyone with authority accepted the contracts at issue on the plaintiff's behalf because it was unclear who had accessed the plaintiff's online account and clicked "I accept" the agreements, and the only two individuals with authority to access that account asserted that they had not done so.  2015 WL 3949349, at \*5.  And in *Nat'l Auto Lenders*, the plaintiff had repeatedly and expressly declined to accept defendants' online agreements and had expressly told its employees and the defendants that only certain enumerated individuals working for the plaintiff were authorized to accept agreements on its behalf.  686 F. Supp. 2d at 1320-21.

Plaintiff's reliance on *Mohammed v. Uber Techs., Inc.*, No. 16-cv-2537, 2017 WL 590289 (N.D. Ill. Feb. 14, 2017) is also misplaced.  The court in *Mohammed* had a limited record before it with no discovery on a motion to dismiss.  On that record, it appeared that the plaintiff there had never himself even visited the screen that had the link to the terms and conditions with the arbitration clause.  Rather, the Uber app was installed on the plaintiff's phone by an employee of the defendant. *Id.* at \*1.  Whether the defendant's employee could be the plaintiff's agent is a far cry from whether the wife and business associates of the Plaintiff here can be Plaintiff's agent.  *Id.* at \*8-9.  Plaintiff also neglects to mention that in *Mohammed*, the court held that the record was insufficient to determine as a matter of law whether the driver knew or should have known about the agreement to arbitrate. *Id.* at \*9, 11.

### C.      Plaintiff Is Bound By the Terms of the Nicosias' Prime Account

In his Opposition, Plaintiff argues that he is not bound by the terms and conditions governing the Nicosias' Prime Account under a derivative rights theory because he was not required to sign in to that account. (Opp. at 24).  But Plaintiff's arguments are irrelevant and misconstrue the relevant case law.

First, it is clear that the Nicosias' Prime Account is bound by Amazon's Conditions of Use, including its arbitration clause, through Ms. Nicosia's sign-up for Amazon Mom on September 30, 2011 and Prime on October 11, 2012.  (MTCA at 18-21). Plaintiff's arguments that Ms. Nicosia never actually clicked on a hyperlink to or read the Prime Ts &Cs, the Mom Ts & Cs, and the Conditions of Use are irrelevant.  (*See* Second Cir. Op. at 20).[4]  As Amazon has demonstrated, courts across the country repeatedly uphold similar online agreements.  (MTCA at 19-20).  Plaintiff has not and cannot argue otherwise. Instead, Plaintiff relies on a series of meritless evidentiary arguments. (*See* Section II.E *infra*). Similarly, Amazon has demonstrated that Ms. Nicosia was on constructive notice of Amazon's Conditions of Use by placing orders on Amazon.com *hundreds of times*.  (MTCA at 21-22).

Second, Plaintiff argues that he is not bound by the Conditions of Use to which the Nicosias' Prime Account agreed because he never signed in, but this argument is irrelevant.  Regardless of whether Plaintiff had to sign in to place the orders of 1 Day Diet, he clearly testified that he knew that his wife had signed up for Prime and that, as far back as 2012, he used that account to place purchases on Amazon.com.  (MTCA at 10-11; SUF, ¶ 101).  Indeed, the two orders of 1 Day Diet were made using a credit card in his wife's name.  *See* Declaration of Regina Schaffer-Goldman dated June 14, 2017 ("RSG Decl."), Exs. 1, 2.  And contrary to Plaintiff's assertions, the fact that the plaintiff in *Motise v. America Online, Inc.*, 346 F. Supp. 2d 563 (S.D.N.Y. 2004) physically signed in to his step-father's account was not critical to the court's decision.  Rather, the key to the court's decision was that he was *using* his step-

---

[4] *See also Starke v. Gilt Groupe, Inc.*, No. 13-cv-5497, 2014 WL 1652225, at *3 (S.D.N.Y. Apr. 24, 2014) ("Regardless of whether he actually read the contract's terms, Starke was directed exactly where to click in order to review those terms, and his decision to click the 'Shop Now' button represents his assent to them."); *Fteja v. Facebook, Inc.*, 841 F. Supp. 2d 829, 840 (S.D.N.Y. 2012) ("Here, Fteja was informed of the consequences of his assenting click and was shown, immediately below, where to click to understand those consequences.").

father's account.  *Id.* at 565-66.  Moreover, Plaintiff argues that he had created three different accounts on Amazon.com and therefore *Motise* does not apply, but that argument is self-serving and absurd.  The fact is that he testified that he used the Nicosias' Prime Account to place his orders of 1 Day Diet and other purchases on Amazon.com and cannot avoid the consequences of doing so.

> **D.**  **The Conditions of Use in Place When Plaintiff and His Wife Opened Their Accounts Do Not Obviate the Need to Arbitrate**

Plaintiff argues that his claims should be governed by the Conditions of Use in place when he and his wife created accounts on Amazon.com and that Amazon's "unilateral modifications" adding an arbitration clause are not binding.  (Opp. at 12-14).  These arguments are red herrings.  Amazon *is not* attempting to modify the Conditions of Use that Plaintiff and his wife agreed to when they created their accounts.  Rather, it is asking this Court to recognize that through hundreds of other actions after August of 2011, Plaintiff or his agents agreed to the Amazon Conditions Use that did have an arbitration clause.  Plaintiff's arguments are, therefore, irrelevant to this motion.  *See Ekin v. Amazon Servs., LLC*, 84 F. Supp. 3d 1172, 1177 (W.D. Wash. 2014) ("Defendant [Amazon] is not arguing that the pre-August 2011 COU to which Plaintiffs agreed have been changed to include the arbitration agreement. Rather, Amazon argues that the post-August 2011 COU to which Plaintiffs agreed on numerous occasions, and which have featured arbitration agreements from their inception, bind Plaintiffs. By arguing thus, Defendant renders its ability to change extant COU without notice irrelevant, as the COU upon which Amazon's Motion is based were presented to and agreed to by both Plaintiffs, each and every time they made a purchase after August 2011.").

> **E.**  **Amazon Submitted Admissible Evidence of Plaintiff's Agreement to Arbitrate**

Plaintiff's argument that Amazon lacks admissible evidence of an agreement to arbitrate is without merit.  Amazon is not obligated to produce the *exact* website screens, down to the shipping options, as Plaintiff suggests in his opposition brief.  (*See* Opp. at 15-16).  It would be completely impractical for Amazon to keep a screenshot of every order placed on Amazon.com.  Recognizing the practical realities of the internet, in cases involving ecommerce, courts repeatedly hold that companies are

not required to produce the actual order screens viewed by plaintiffs provided that a similar screenshot is produced with appropriate supporting declarations. *See, e.g.*, *Zaltz v. JDate*, 952 F. Supp. 2d 439, 451 (E.D.N.Y. 2013) (exemplary screenshots of site's sign-up and payment pages); *5381 Partners LLC v. Shareasale.com, Inc.*, No. 12-cv-4263, 2013 WL 5328324, at *4-8 (E.D.N.Y. Sept. 23, 2013) (declaration and accompanying screenshots); *see also Kearney v. Okemo Ltd. Liab. Co.*, No. 5:15-CV-00166, 2016 WL 4257459, at *2 (D. Vt. Aug. 11, 2016) (rejecting plaintiff's attempt to create a factual dispute by asserting that defendant failed to produce actual release with his signature where company representative testified that current click-wrap agreement release was the same as the release used in 2008 when plaintiff signed up for membership); *In re Online Travel Co.*, 953 F. Supp. 2d 713, 718-19 (N.D. Tex. 2013) (rejecting argument that plaintiff is not bound by terms because defendant did not submit "transaction-specific evidence" regarding assent). Plaintiff made a similar argument on appeal (Second Cir. Dkt. 41, at 23-24 n.8), and the Second Circuit implicitly rejected it.[5]

Here, Amazon produced a sample of an order screen that was the *only* order screen format used by Amazon from April 4, 2011 to June 26, 2013. *See* SUF ¶¶ 32, 120-123; Ressmeyer Decl., ¶ 16 & Ex. E. This necessarily was the format of the order screen Plaintiff would have seen when placing the orders of 1 Day Diet in January and April 2013. *See* Ressmeyer Decl., ¶¶ 41-42.[6] Amazon's Senior Corporate Counsel explained that while shipping options and specific information regarding items in a customer's cart would vary, the critical elements binding Plaintiff and his agents would remain constant. *See* Lin

---

[5] Plaintiff's cases are inapposite. In *Mayfield v. Asta Funding, Inc.*, 95 F. Supp. 3d 685 (S.D.N.Y. 2015), the defendant did not provide an example of the agreement to which it argued plaintiffs were bound, but only eighteen sample arbitration agreements, none of which were identical. And in *Bazemore v. Jefferson Capital Sys., LLC*, 827 F.3d 1325, 1330-32 (11th Cir. 2016), the defendant seeking to compel arbitration produced no evidence of what the terms governing the credit card account were or what clickwrap agreement appeared on plaintiff's computer screen when she applied for the card. *Id.* at 1331. Notably, the agreement at issue was purportedly sent by mail in a "Welcome Kit" after the online application, but the defendant presented no evidence that it had actually sent the agreement. *Id.* Nor did the defendant present evidence that that agreement contained an arbitration provision. *Id.*

[6] Plaintiff selectively quotes from Amazon's 30(b)(6) witness's deposition transcript, ignoring her testimony that the checkout page screenshots produced by Amazon are "accurate in the portions [they] represent." Ressmeyer Tr. at 155:16-21. Plaintiff also omits Amazon's testimony that "consistently throughout time we show, 'By placing your order, you agree to the Privacy Notice and Conditions of Use' across the top – very top of the page" and that such language was a "consistent theme over the years with our checkout page." *Id.* at 154:2-17.

Decl., ¶ 4 & Ex. 1.

Similarly, Plaintiff's arguments that the Amazon Mom and Prime screenshots "could not have been the screens viewed by Annemarie Nicosia" are without merit.  (Opp. at 17).  Amazon laid the foundation for these documents through the sworn declaration of its long-time employee who has personal knowledge of the facts set forth therein.  Neither Plaintiff nor his wife could disagree.  Plaintiff argues that the Amazon Mom sign-up pages submitted with Amazon's motion have a "copyright date of 2012" and therefore supposedly "could not be" what was in effect when Ms. Nicosia enrolled in Amazon Mom in September 2011.  (Pls. Opp. to SUF, ¶ 83).  But Amazon submitted a sworn declaration of its Associate General Counsel, who has personal knowledge of the facts set forth in her declaration, that the Amazon Mom screenshots were "in place on September 30, 2011."  (SUF, ¶¶ 83-86, Ressmeyer Decl., ¶ 27 & Ex. J).

F.     **The Arbitrator Must Decide Questions of Validity of the Conditions of Use**

Plaintiff concedes that this Court, through Judge Townes, has already held that his illegality argument is an issue reserved for the arbitrator.  (Opp. at 19; *see also* Dkt. 79, at 16-17).  Plaintiff's assertion that this "ruling was vacated" by the Second Circuit is misplaced.  (Opp. at 19).  The Second Circuit's opinion explicitly and purposely did not reach this issue.  (*See* Second Cir. Op., at 35 n.7).  Therefore, this Court's previous holding that an arbitrator must decide whether the Conditions of Use are void as an illegal contract stands and certainly reflects Judge Townes' view of the issue, which was not disturbed by the Second Circuit.

If this Court does reconsider its ruling, it should reject Plaintiff's argument that *Granite Rock Co. v. International Brotherhood Of Teamsters*, 561 U.S. 287 (2010) limited the Supreme Court's holding in *Buckeye* that challenges to the contract as a whole that render the agreement to arbitrate unenforceable is a matter for arbitration.  *See Buckeye Check Cashing, Inc. v. Cardegna*, 546 U.S. 440, 444-46 (2006).  The *Granite Rock* decision did not change this principle.  In *Granite Rock*, the Supreme Court addressed an employer's claims against a union arising from a strike.  561 U.S. at 291-95.  The claims turned, in part, on whether a collective bargaining agreement or "CBA" containing a "no-strike" provision was

validly formed during the strike period. *Id.* Because the CBA also contained an arbitration clause, the Supreme Court considered whether the dispute over the CBA's ratification date was a matter for judicial, rather than arbitral resolution. *Id.* at 303-05. As the Supreme Court explained, "the district court was required to decide the CBA's ratification date in order to determine whether the parties consented to arbitrate the matters covered by the demand" and should have decided the ratification date question before compelling arbitration. *Id.* at 304. Importantly, although describing *Buckeye* as holding that "whether a contract containing an arbitration clause was illegal when formed . . . [was] arbitrable in certain circumstances," *id.* at 296-97, there is no indication that the Supreme Court intended to overrule the holding in *Buckeye*. Rather than represent some limitation on *Buckeye* relevant to this case and sufficient to disturb the District Court's decision, *Granite Rock* simply "reemphasize[d] the proper framework for deciding when disputes are arbitrable" in the context of the "unusual facts" of the particular case. *Id.*

Here, Plaintiff does not contend that the arbitration clause *itself* is illegal, but rather the whole contract is tainted by the alleged illegality of selling 1 Day Diet – the precise situation *Buckeye* addressed. Even after *Granite Rock*, courts in this Circuit and across the country continue to hold that an illegality challenge goes to the validity of the contract as a whole and must be resolved by the arbitrator. *See, e.g.*, *Lapina v. Men Women N.Y. Model Mgmt. Inc.*, 86 F. Supp. 3d 277, 287 (S.D.N.Y. 2015) (holding arbitrator must resolve Plaintiffs' illegality challenge to agreement); *see also Arrigo v. Blue Fish Commodities, Inc.*, 408 F. App'x 480, 482 (2d Cir. 2011) ("An arbitration provision is severable from the remainder of the contract and so a party's challenge to another provision of the contract, or to the contract as a whole, does not prevent a court from enforcing a specific agreement to arbitrate." (citation and quotation omitted)). "[T]his is, in part, because arbitration clauses are deemed 'severable' or 'separable' from the remainder of the relevant contract, and a court must determine only whether the clause itself suffers from a defect which would render it invalid." *Bassett v. Elec. Arts, Inc.*, 93 F. Supp. 3d 95, 103 (E.D.N.Y. 2015); *see JLM Indus., Inc. v. Stolt-Nielsen SA*, 387 F.3d 163, 170 (2d Cir. 2004) ("[W]here no claim is made that fraud was directed to the arbitration clause itself, a broad arbitration clause will be held

to encompass arbitration of the claim that the contract itself was induced by fraud" (citations and quotations omitted)).

### G.    Amazon Has Not Waived Its Right to Arbitrate

Plaintiff argues that Amazon has waived its right to arbitrate because it "did not move to compel arbitration until this case was pending for 32 months."  (Opp. at 5). This argument is ridiculously disingenuous at best and dishonest at worst.  The filings and proceedings in this case clearly demonstrate that Amazon has consistently asserted with great vigor, almost to a fault, its right to arbitrate this case.  To suggest waiver is folly.  Since Amazon's very first substantive filing – its September 23, 2014 pre-motion letter, Amazon has consistently argued that Plaintiff's claims are subject to arbitration.  (*See, e.g.*, Dkt. 13, at 1 ("Plaintiff agreed to be bound by the Amazon Conditions of Use, which require arbitration of all of his claims.").  Further, Plaintiff knowingly mischaracterizes Amazon's 12(b)(6) motion, which argued *first and foremost* that Plaintiff's claims are subject to arbitration and should be dismissed on that basis.  (*See, e.g.*, Dkt. 52, at 1 ("Most importantly, Plaintiff's claims are all subject to mandatory, individual arbitration"); Dkt. 60, at 1).  Amazon decidedly did not move "alternatively" on the basis of arbitration, as Plaintiff would like the court to believe.  (Opp. at 6).   After remand, as this Court is well aware, Amazon has consistently asserted that Plaintiff's claims are subject to arbitration and that it intended to file a motion to compel arbitration after discovery on just that issue.[7]

Moreover, case law in this circuit clearly supports that Amazon did not waive its right to arbitrate.  "In light of the strong presumption favoring arbitration, 'a waiver is not to be lightly inferred ... and any doubts are resolved in favor of arbitration.'" *Chehebar v. Oak Fin. Grp., Inc.*, No. 14-cv-2982, 2017 WL 946292, at *2 (E.D.N.Y. Mar. 7, 2017) (alteration in original) (quoting *LG Elecs., Inc. v. Wi-Lan USA, Inc.*, 623 F. App'x 568, 569 (2d Cir. 2015)). While courts consider several factors such as "(1) the time

---

[7] These assertions are in Amazon's Answer filed on Oct. 13, 2016 (*see* ¶¶ 1, 2, 7, 11-12, 14, 63-65, 67-72, 83, 128, 132, 138, 160 & First Affirmative Defense (Dkt. 84)), its arbitration-related discovery requests, and in its objections and responses to Plaintiff's discovery requests.  RSG Decl., Exs. 3-10.

elapsed from commencement of litigation to the request for arbitration, (2) the amount of litigation (including any substantive motions and discovery), and (3) proof of prejudice," *In re Crysen/Montenay Energy Co.*, 226 F.3d 160, 163 (2d Cir. 2000) (citations and quotations omitted)), "[t]he key to a waiver analysis is prejudice." *Thyssen, Inc. v. Calypso Shipping Corp., S.A.*, 310 F.3d 102, 105 (2d Cir. 2002).

Here, none of those factors support waiver.  First, as detailed above, Amazon did not delay in asserting its right to arbitrate – it made that argument from the very outset.  Second, the amount of litigation to date does not support waiver because that litigation – including the trip to the Second Circuit – dealt entirely with the arbitration issue.  Moreover, Courts routinely hold that filing a motion to dismiss on the merits before moving to compel arbitration is not a sufficient basis on which to find waiver.  *See Murray v. UBS Sec., LLC*, No. 12-cv-5914, 2014 WL 285093, at *6 (S.D.N.Y. Jan. 27, 2014) (finding no waiver where defendants filed a motion to dismiss before moving to compel arbitration); *Mahmoud Shaban & Sons Co. v. Mediterranean Shipping Co., S.A.*, No. 11-cv-6322, 2013 WL 5303761, at *2 (S.D.N.Y. Sept. 20, 2013) (same).  As to discovery, since remand, the discovery Amazon has sought has been limited and focused on the issue of whether Plaintiff agreed to arbitrate.[8]  The topics Amazon covered at Plaintiff's deposition pertained to whether Plaintiff agreed to arbitrate his claims and to potential defenses Plaintiff may attempt to raise to contract formation, enforcement, and/or validity.[9]  That there may be an overlap in facts that bear on Plaintiff's contract defenses and the merits of this case is irrelevant.  Amazon has also consistently sought to defer merits discovery until after the resolution of this motion to compel arbitration, including in its discovery responses, at court conferences, and in letters to the Court.  (*See, e.g.*, RSG Decl., Exs. 3-7; Dkt. Nos. 89, 98, 100).

---

[8] Indeed, in both the notice of Plaintiff's deposition and at its outset, counsel for Amazon specifically emphasized that "we are here this morning to take your deposition *relative to the arbitration issues* in [this] lawsuit."  *See* D. Nicosia Tr. 6:5-8 (emphasis added); RSG Decl., Ex. 13.  Contrary to Plaintiff's assertions, Amazon has not propounded non-arbitration related discovery.

[9] For example, questions about the marketing and packaging of 1 Day Diet and whether Plaintiff sought a refund bear on the illegality contract defense Plaintiff has wrongly attempted to assert.

Third, Plaintiff has not suffered any cognizable prejudice here.[10]  Plaintiff argues that "[b]ecause of the potentially dispositive 12(b)(6) motion filed by Amazon, [he] has been prejudiced." (Opp. at 8). He offers no reason for this and courts routinely reject that idea.  *See Murray*, 2014 WL 285093, at *6; *Mahmoud*, 2013 WL 5303761, at *2; *see also Rush v. Oppenheimer & Co.*, 779 F.2d 885, 888-89 (2d Cir. 1985) (holding no prejudice and therefore no waiver of arbitration where, *inter alia*, defendants filed a motion to dismiss and engaged in extensive discovery).  Plaintiff has not articulated any other basis for finding prejudice, nor could he.[11]

### H.   Plaintiff's Other Waiver Arguments Are Meritless

Plaintiff also claims that the agency and derivative rights doctrines are affirmative defenses, that Amazon failed to plead them in its Answer, and therefore, they have been waived.  (Opp. at 20-21, 24 n.11).  These arguments are also meritless.  First, Amazon's agency and derivative rights arguments are not affirmative defenses.  Rather, the affirmative defense is arbitration, which Amazon loudly proclaimed at its very first affirmative defense.[12]  (*See* Answer at 34, Dkt. 84).  "Agency" is an affirmative defense when a defendant is accused of conduct but undertook that conduct as an agent and is therefore not responsible for it.  That is simply not the case here.  Second, in asserting its arbitration rights in its Answer, Amazon said that Plaintiff's claims "are subject to mandatory arbitration and a class action waiver pursuant to one or more agreements binding on the Plaintiff." (Answer at 34, Dkt. 84).  By articulating the issue as an "agreement binding on the Plaintiff," Amazon was clearly asserting that some agreement that Plaintiff or someone else made was "binding on the Plaintiff."  Third, even assuming that

---

[10] The cases that Plaintiff relies on to support his waiver argument are all inapplicable – they each involve situations where the party seeking arbitration did so after discovery was closed, the case was close to or on the eve of trial, and/or the case had been pending for many years. (Opp. at 6-8).

[11] Plaintiff has not identified any discovery Amazon has obtained that would not be available in an arbitral forum, *see Brownstone Inv. Grp., LLC v. Levey*, 514 F. Supp. 2d 536, 543-45 (S.D.N.Y. 2007), or demonstrated "substantial expense and loss of time."  *Mahmoud*, 2013 WL 5303761, at *2.

[12] Plaintiff's cases do not hold that agency is generally an affirmative defense. For example, in *Garanti Finansal Kiralama A.S. v. Aqua Marine & Trading Inc.*, 697 F.3d 59, 72 (2d Cir. 2012), agency was an affirmative defense because in plaintiff's declaratory judgment complaint, it specifically asserted that it was not a party to the agreement at issue; the court emphasized that "[t]his is the rare case where agency is an affirmative defense."

the agency and derivative rights issues here are affirmative defenses and have not been pled in the Answer, waiver is certainly not automatic. *None* of Plaintiff's cases stand for that proposition. Rather, Plaintiff's own cases demonstrate that courts in this Circuit routinely hold that failure to plead an affirmative defense "is far from fatal." *Estate of Hamilton v. City of N.Y.*, 627 F.3d 50, 58 (2d Cir. 2010) (allowing defendants to raise affirmative defenses for the first time at summary judgment). "A district court may nevertheless entertain unpled affirmative defenses in the absence of undue prejudice to the plaintiff, bad faith or dilatory motive on the part of the defendant, futility, or undue delay of the proceedings." *Reives v. Lumpkin*, 632 F. App'x 34, 35 (2d Cir. 2016) (allowing defendant to raise affirmative defense for the first time in his pretrial memorandum). Here, Plaintiff cannot demonstrate that any of these factors are present, especially undue prejudice. Plaintiff has been on express notice of the agency and derivative rights theories since at least November 7, 2016, when Amazon served arbitration-related interrogatory responses. (*See* RSG Decl., Exs. 10, 11.) This was well before Plaintiff took Amazon's deposition and concluded arbitration discovery. Amazon has also clearly articulated these theories in many conferences before this Court. Thus, even if the agency and derivative rights issues here are affirmative defenses, this court should properly consider them.[13]

## III.    CONCLUSION

For each of the reasons stated above, the Court should grant Amazon's motion to compel arbitration.

---

[13] Should the Court deem these arguments affirmative defenses, Amazon respectfully requests that the Court consider this motion to compel arbitration as a motion to amend its answer as well. *See Giuffra v. Vantage Travel Serv., Inc.*, No. 13-cv-6880, 2015 WL 3457246, at *5 n.4 (S.D.N.Y. June 1, 2015).

Dated:  June 14, 2017

By:   MORGAN, LEWIS & BOCKIUS LLP

/s/Gregory T. Parks
Gregory T. Parks (admitted *pro hac vice*)
Jacqueline C. Gorbey (admitted *pro hac vice*)
1701 Market Street
Philadelphia, PA 19103
Tel: (215) 963-5000

Regina Schaffer-Goldman
101 Park Avenue
New York, NY  10178
Tel: (212) 309-6000

*Attorneys for Defendant Amazon.com, Inc.*