UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
-------------------------------------------------------------X
DEAN NICOSIA, on behalf of himself and all
others similarly situated,

                                  Plaintiff,

                                                          **REPORT AND RECOMMENDATION**
                -against-                                  **14 CV 4513 (SLT)(LB)**

AMAZON.COM, INC.,

                                  Defendant.
-------------------------------------------------------------X
**BLOOM, United States Magistrate Judge:**

       Plaintiff Dean Nicosia ("Nicosia") brings this putative class action against defendant

Amazon.com, Inc. ("Amazon") asserting claims under the Consumer Product Safety Act (the

"CPSA"), 15 U.S.C. § 2051 *et seq*, and state law.  Specifically, Nicosia alleges that Amazon

"repeatedly sold weight loss supplements containing sibutramine[,]" a Schedule IV controlled

substance. Complaint, ECF No. 1, ¶ 2.  After moving to dismiss the complaint, as well as

conducting limited discovery upon remand, Amazon now moves to compel arbitration pursuant to

the Federal Arbitration Act (the "FAA"), 9 U.S.C. § 1 *et seq.*  The Honorable Sandra L. Townes

referred defendant's motion to compel arbitration to me.[1]  For the following reasons, it is

respectfully recommended that defendant's motion should be granted.

---

[1] "Although the Second Circuit has not yet addressed the issue, a number of well-reasoned District Court decisions within this Circuit have concluded that a motion to compel arbitration is non-dispositive, and therefore that a Magistrate Judge may decide the motion pursuant to 28 U.S.C. § 636(b)(1)(A) and Fed. R. Civ. P. 72(a) rather than issue a report and recommendation pursuant to 28 U.S.C. § 636(b)(1)(B) and Fed. R. Civ. P. 72(b)." Marcus v. Collins, No. 16 CV 4221 (GBD) (BCM), 2016 WL 8201629, at *1 n.1 (S.D.N.Y. Dec. 30, 2016) (collecting cases).  However, in light of Judge Townes' referral, I issue this Report & Recommendation.

## BACKGROUND

I.   Procedural History

A.   The Parties' Initial Motions[2]

Nicosia filed this action on July 28, 2014. ECF No. 1.  On September 23, 2014, Amazon requested a pre-motion conference on the ground that the Court "should enforce the arbitration clause and dismiss the case in favor of an arbitral forum[.]" ECF No. 13.  In the alternative, Amazon also argued that the complaint should be dismissed for failure to state a claim. Id.  On September 26, 2014, Amazon sought a protective order and a stay of discovery. ECF No. 15.  In light of Amazon's intended motion to dismiss, Judge Townes stayed discovery. ECF No. 18.

On December 19, 2014, Nicosia moved for a preliminary injunction seeking to enjoin Amazon from "sell[ing] and distrbut[ing] products that contain sibutramine." Nicosia's Memorandum in Support of Plaintiff's Motion for a Preliminary Injunction, ECF No. 36-1, at 2-3.  On December 24, 2017, Amazon moved to dismiss. ECF No. 52.  Notably, "Amazon did not move to compel arbitration, but instead argued that the complaint should be dismissed in favor of individual arbitration for failure to state a claim because Nicosia had agreed to arbitration." Nicosia, 834 F.3d at 228 (internal quotations omitted).

On February 2, 2015, Judge Townes granted Amazon's motion to dismiss finding that "all of [Nicosia's] claims are subject to mandatory arbitration." Nicosia v. Amazon, Inc., 84 F. Supp. 3d 142, 161 (E.D.N.Y. 2015).  As stated by the Second Circuit, "[t]he district court [] concluded that Nicosia was given reasonable notice of the conditions of use given: (1) the conspicuousness of the hyperlink to the 2012 conditions of Use on the Order Page; and (2) the fact that Nicosia signed up for an Amazon account via the Registration page in 2008, which required assent to the

---

[2] The procedural history of the parties' initial motions is set forth in Nicosia v. Amazon.com, Inc., 834 F.3d 220, 227-228 (2d Cir. 2016).  I include a brief recitation of the procedural history in the interest of completeness.

2

2008 Conditions of Use that named King County as the forum for suit but provided that the conditions were subject to change." Nicosia, 834 F.3d at 228.  Judge Townes also denied Nicosia's motion for a preliminary injunction for lack of standing and for failure to "demonstrate that he is likely to prevail on the merits of his CPSA claim." Nicosia, 84 F. Supp. 3d at 160.

B.  The Second Circuit's Decision

Nicosia appealed Judge Townes' decision to the Second Circuit, ECF No. 81, and on September 20, 2016, the Second Circuit affirmed Judge Townes' decision in part and vacated it in part. Nicosia, 834 F.3d 220.

At the outset, the Second Circuit agreed with Judge Townes and found that "Amazon's motion to dismiss neither sought an order compelling arbitration nor indicated that Amazon would seek to force Nicosia to arbitrate in the future[.]" Id. at 230.  However, because Judge Townes' decision was on a motion to dismiss pursuant to Rule 12(b)(6) rather than a motion to compel arbitration, the Circuit found that "the district court erred in considering certain factual materials extrinsic to the complaint." Id. at 234.  As to the allegations of the complaint as well as the documents integral to the complaint, the Court found that Nicosia plausibly stated a claim for relief as Amazon failed to show that Nicosia was on notice and had agreed to arbitration. Id. at 235, 238.

The Circuit stated that it is "not convinced that [Amazon's] notice was sufficient" and that "reasonable minds could disagree." Id. at 236-37.  The Court made clear that it did "not hold that there was no objective manifestation of mutual assent here as a matter of law." Id. at 238.  Rather, the Court held that "reasonable minds could disagree on the reasonableness of notice." Id. (citations omitted).  The Second Circuit also explained that "factual questions remain as to the

formation of the agreement to arbitrate." Id. at 238 n. 7.  Therefore, the matter was remanded for further proceedings.[3]

C.  Arbitration Related Discovery

The Court held a conference and set November 15, 2016 as the deadline to complete all arbitration-related discovery.[4] See Docket Entry, dated Sept. 29, 2016.  On November 23, 2016, the matter was reassigned to me.  On December 15, 2016, I extended the deadline to complete all arbitration-related discovery until February 15, 2017.

By letter dated February 27, 2017, Amazon requested a pre-motion conference in advance of moving to compel arbitration. ECF No. 98.  By the same letter, Amazon requested a stay of fact discovery while the motion was pending. Id.  On March 30, 2017, the Court granted Amazon's requests.  On June 14, 2017, Amazon filed its fully-briefed motion to compel arbitration.  Plaintiff opposes the motion.  Both parties submitted supplemental authority in support of their positions.[5] ECF Nos. 150, 151, 154, 155.  On July 25, 2017, the Court heard oral argument on the motion.

---

[3] Although the Circuit held that plaintiff had plausibly stated a claim for relief, it affirmed Judge Townes' decision on Nicosia's motion for a preliminary injunction. Id. at 239.

[4] The Honorable Marilyn D. Go was originally assigned this case until she took recall status, at which time the case was reassigned to me. See Docket Entry, dated Nov. 23, 2016.

[5] By letter dated August 16, 2017, Nicosia, in support of his opposition to Amazon's motion, brought Judge Garaufis' decision in Starke v. Squaretrade, Inc., No. 16 CV 7036 (NGG), 2017 WL 3328236 (E.D.N.Y. Aug. 3, 2017.), to the Court's attention. ECF No. 154.  In denying defendant's motion to compel arbitration, Judge Garaufis relied on the fact that plaintiff did not receive a hyperlink to the contract terms until 24 hours after his purchase and that the e-mail containing the hyperlink was "inconspicuously placed in small font at the very bottom of the email" and "made it easy to miss, even for a consumer who was looking for it." Id. at **6-8.  As the arbitration provision "appeared for the first time in a set of post-sale terms and conditions[,]" id. at *1, it is clear that Starke does not control here.

II.     Facts[6]

A.  Amazon Accounts and Programs

Amazon.com is an online retail website "through which consumers may purchase hundreds of millions of unique products." Amazon's 56.1 ¶ 1.   In order to purchase any product on Amazon.com, a customer must create an Amazon account or use an existing account. Id. ¶ 3.  Prior to making any purchase, a customer must sign-in to an Amazon account. Id. ¶¶ 4-7.  Depending on the individual browser and software settings of an Amazon customer, the customer will either manually sign-in to the account using their username and password or the customer may elect to save their username and password on their computer in order to sign-on. Id. ¶¶ 5-9.

i.     Amazon Prime and Amazon Mom[7]

Amazon Prime ("Prime") is an Amazon program that offers Amazon customers additional benefits for an annual membership fee. Id. ¶¶ 12-14.  Although there are a number of ways by which an Amazon user may sign-up for Prime, all customers who sign-up must accept the Amazon Prime Terms and Conditions ("Prime Terms & Conditions").[8] Id. ¶ 16.

---

[6] The Court has carefully reviewed the record which includes: Amazon's Rule 56.1 Statement of Undisputed Material Facts in Support of its Motion to Compel Arbitration ("Amazon's 56.1"), ECF No. 115; the Declaration of Gregory T. Parks in Support of Defendant Amazon.com, Inc.'s Motion to Compel Arbitration ("Parks Decl."), ECF No. 118, and the exhibits attached thereto; the Declaration of Karen Ressmeyer in Support of Defendant Amazon.com, Inc.'s Motion to Compel Arbitration ("Ressmeyer Decl."), ECF No. 116, and the exhibits attached thereto; the Declaration of Jonathan Lin in Support of Defendant Amazon.com, Inc.'s Motion to Compel Arbitration ("Lin Decl."), ECF No. 117, and the exhibits attached thereto; Plaintiff's Responses and Objections to Amazon's Local Rule 56.1 Statement of Material Facts ("Nicosia's 56.1 Opp."), ECF No. 119; Plaintiff's Local Rule 56.1 Counter Statement of Undisputed Material Facts ("Nicosia's Counter 56.1"), ECF No. 127; Declaration of Dean Nicosia ("Nicosia Decl."), ECF No. 120; Declaration of Joseph S. Tusa in Support of Plaintiff's Opposition to Amazon.com, Inc.'s Motion to Compel Arbitration ("Tusa Decl."), ECF No. 122, and the exhibits attached thereto; Defendant Amazon.com, Inc.'s Responses and Objections to Plaintiff's Local Rule 56.1 Statement of Undisputed Facts ("Amazon's 56.1 Reply"), ECF No. 124; and the Declaration of Regina Schaffer-Goldman in Further Support of Defendant Amazon.com, Inc.'s Motion to Compel Arbitration ("Schaffer-Goldman Decl."), ECF No. 125, and the exhibits attached thereto. Unless otherwise noted, the facts are undisputed and are supported by record evidence.

[7] For the most part, Nicosia does not dispute the facts set forth by Amazon regarding the substantive details of the Amazon Prime and Amazon Mom programs. However, Nicosia maintains that "Amazon Prime and the Amazon Mom terms and conditions are inapplicable and irrelevant to Plaintiff's purchases of 1 Day Diet from Amazon.com." Nicosia's 56.1 Opp. ¶ 14.  Nicosia further disputes that he "was provided the notice of, or assent[ed] to, any version of the Amazon Prime terms and conditions." Id. ¶ 16.

[8] The Prime Terms & Conditions in effect on September 30, 2011 stated:

Amazon Mom is an Amazon program that offers Amazon customers additional benefits and exclusive deals on Amazon.com. Amazon's 56.1 ¶ 21.  Customers who sign up for Amazon Mom are required to accept the Amazon Mom Terms and Conditions ("Mom Terms & Conditions") as well as the Prime Terms and Conditions.[9] Id. ¶ 22.

ii.     Amazon's Conditions of Use[10]

Since August 19, 2011, Amazon's Conditions of Use has included an arbitration provision. Amazon's 56.1 ¶¶ 23-24. The arbitration provision states as follows:

> **Any dispute or claim relating in any way to your visit to Amazon.com or to products or services sold or distributed by Amazon or through Amazon.com will be resolved by binding arbitration, rather than in court . . . . We each agree that any dispute resolution proceedings will be conducted only on an individual basis and not in a class, consolidated or representative action.**

Id. ¶ 88 (emphasis in original).  Plaintiff disputes that this provision was lawfully 'in effect' when his family's Amazon accounts were created. Nicosia's Rule 56.1 Opp. ¶ 88.  Rather, plaintiff maintains that Amazon's Conditions of Use that were in effect when he first created an account in 2008 ("2008 Conditions of Use") governed his relationship with Amazon.  The 2008 Conditions of Use included a clause requiring disputes for claims exceeding $7,500 to be brought in "any state

---

> Please note that your use of the Amazon.com website and Prime membership are also governed by our Conditions of Use and Privacy Notice, as well as all other applicable terms, conditions, limitations and requirements on the Amazon.com Web site, all of which (as changed over time) are incorporated into these terms.  If you sign up for a Prime membership, you accept these terms, conditions, limitations and requirements.

July 7, 2011 Prime Terms & Conditions, annexed to Ressmeyer Decl. as Exhibit L ("Ex. L") (emphasis in original). Although Amazon has changed its Prime Terms & Conditions several times since September 30, 2011, the relevant portions have remained substantively identical. Compare id. with December 29, 2011 Prime Terms & Conditions, annexed to Ressmeyer Decl. as Exhibit O ("Ex. O").

[9] The Amazon Mom Terms & Conditions in effect on September 30, 2011, stated:

> Please note that your use of the Amazon.com website and the Amazon Mom membership are also governed by our Conditions of Use, Privacy Notice, Amazon Prime Terms and Conditions, as well as all other applicable terms, conditions, limitations, and requirements on the Amazon.com Web site.

Mom Terms & Conditions, annexed to Ressmeyer Decl. as Exhibit K ("Ex. K").

[10] Nicosia's disputes regarding Amazon's Conditions of Use rest primarily on legal arguments regarding notice and contract formation. See Nicosia's 56.1 Opp. ¶¶ 23-24.  There is no dispute that Amazon's Conditions of Use contained an arbitration provision since August 2011.

or federal court in King County, Washington[.]" 2008 Conditions of Use, annexed to Tusa Decl. as Exhibit M ("Ex M").   Notwithstanding the lack of an arbitration provision in the 2008 Conditions of Use, there is no dispute that, since August 19, 2011, Amazon's Conditions of Use contained an arbitration provision.[11]  See August 19, 2011 Conditions of Use, annexed to Ressmeyer Decl. as Exhibit M ("Ex. M").

B.  The Nicosia Accounts

Dean Nicosia and his wife, Annemarie Nicosia, are frequent online shoppers, including shopping frequently on Amazon.com. Amazon's 56.1 ¶¶ 47-52.  Amazon's records reflect that plaintiff has three accounts in his name. Id. ¶ 60.  Although plaintiff does not "recall ever opening an account[,]" he does "recall giving [Amazon his] information and making purchase[s]." Nicosia's Deposition ("Nicosia Dep."), annexed to Tusa Decl. as Exhibit A ("Ex. A"), 194:4-11. Mr. Nicosia's three accounts were all created prior to August 19, 2011, the date that Amazon's updated its Conditions of Use to include an arbitration clause. Amazon's 56.1 ¶¶ 60; see also Ressmeyer Deposition (Ressmeyer Dep."), annexed to Tusa Declaration as Exhibit D ("Ex. D"), 111:8-11.  Amazon's records show that after Amazon updated its Conditions of Use on August 19, 2011, nine purchases were made using one of the accounts in plaintiff's name. Amazon's 56.1 ¶ 64; see also Account Records for Account No. A17VEJU72310BG, annexed to Ressmeyer Decl. as Exhibit H ("Ex. H") (showing nine purchases made from October 10, 2011 through May 25, 2012).  Plaintiff does not explicitly acknowledge these nine purchases. See Nicosia's 56.1 Opp. ¶¶ 63; see also Plaintiff Dean Nicosia's Supplemental Objections and Responses to Interrogatory Nos.

---

[11] Amazon has updated its Conditions of Use several times since August 19, 2011.  However, the arbitration provision has remained essentially the same. Compare August 19, 2011 Conditions of Use, Ressmeyer Decl. at Ex. M with October 10, 2012 Conditions of Use, annexed to Ressmeyer Decl. as Exhibit P ("Ex. P") and December 5, 2012 Conditions of Use, annexed to Ressmeyer Decl. as Exhibit R ("Ex. R").

1, 4, and 8 ("Nicosia's Supp. Obj. and Resp."), annexed to Parks Decl. as Exhibit 8 ("Ex. 8") (where Nicosia does not list any purchases from Account No. A17VEJU72310BG).

Amazon's records also reflect an account in Annemarie Nicosia's name. Amazon's 56.1 ¶ 72.  The Annemarie Nicosia Account (hereinafter "Annemarie's Account") was created on June 9, 2008. Id.  Since Amazon included an arbitration clause in its Conditions of Use on August 19, 2011, Annemarie's Account has placed 573 orders on Amazon.com. Id. ¶ 76.  Dean Nicosia and Annemarie Nicosia both use Annemarie's Account to place orders on Amazon.com. Id. ¶ 77; see also Account Records for Account No. A20YC90YVFC5FA, annexed to Ressmeyer Decl. as Exhibit I ("Ex I") at AMZ 475-490 (listing Dean Nicosia and Annemarie Nicosia as names appearing on credit cards linked to purchases made through Annemarie's Account).

On September 30, 2011, Annemarie's Account enrolled in the Amazon Mom program and a free Prime trial.[12] Id. ¶ 81.  On October 11, 2012, the date the free Prime trial expired, Annemarie Nicosia renewed her account's enrollment in the Prime program. Id. ¶¶ 89-90.  Although Annemarie does not recall the exact steps she took to renew the membership, she believes that she clicked on a button allowing her to renew the Prime membership. Annemarie Dep. 80:22-84:19. Although plaintiff disputes that Annemarie observed any language next to the button, Amazon submits that in renewing the Prime membership, Annemarie would have been shown a registration page depicting language stating, in sum and substance, that she was agreeing to the Amazon Prime Terms and Conditions. Amazon's 56.1 ¶¶ 93-95; Nicosia's 56.1 Opp. ¶¶ 93-95.  In addition, in renewing the Amazon Prime subscription, Amazon asserts that Annemarie's Account would have

---

[12] Annemarie Nicosia's friend, Al Dennis, enrolled Annemarie's Account in the Amazon Mom program. Annemarie Nicosia Deposition ("Annemarie Dep."), annexed to Parks Decl. as Exhibit 3 ("Ex. 3") at 58:8-18; 66:5-17.

been sent an e-mail with a link to Prime's Terms and Conditions.[13] Amazon's 56.1 ¶ 99. Annemarie's Account's Prime membership has been automatically renewed each year. Id. ¶ 100.

At some point in 2012, Dean Nicosia became aware that Annemarie's Account had signed up for a Prime membership. Amazon's 56.1 ¶ 101.  From November 2012 until August 2016, Nicosia made at least 38 purchases on Amazon.com through Annemarie's Account and took advantage of various Prime membership benefits, including free shipping. Id. ¶¶ 102, 113; see also Nicosia's Supp. Obj. and Resp., Parks Decl, Ex. 8 (listing, in a spreadsheet, 51 orders made by Dean Nicosia on Amazon.com, including the 38 orders he made after Amazon updated its Conditions of Use on August 19, 2011).  Since filing this lawsuit, plaintiff has made at least 31 purchases on Amazon.com through Annemarie's Account. Id. ¶ 115.

C.  Nicosia's Purchase of 1 Day Diet Pills

On January 30, 2013 and April 19, 2013, Dean Nicosia purchased 1 Day Diet pills on Amazon.com using Annemarie's Account. Id. ¶ 120; Nicosia's Counter 56.1 ¶¶ 1, 5.   Amazon cannot produce the actual order screens that Nicosia saw when he purchased the 1 Day Diet pills; however, the Court does not rely on the order screens to determine defendant's instant motion to compel.[14]  As discussed infra, the Court finds that Nicosia had actual and/or constructive notice of

---

[13] Plaintiff states that Amazon has not "produced admissible evidence of any *actual* email it sent to Annemarie Nicosia concerning the renewal of her Amazon Prime Account." Nicosia's 56.1 Opp. ¶ 99 (emphasis in original). Notwithstanding plaintiff's point that Amazon has not produced the actual email, Annemarie testified that an email may have been sent concerning the renewal of her Amazon Prime Account but that she never saw it. Annemarie Dep. 85:8-15.

[14] Specifically, plaintiff argues that Amazon has not produced the exact order screens viewed by plaintiff and that, as a result, "Amazon's evidentiary submission does not satisfy its threshold burden to provide *admissible* evidence of an agreement to arbitrate based on *complete* and *actual* order screens viewed by Nicosia (or anyone else)." Nicosia's Opp. at 15 (emphasis in original).  In support of his position, plaintiff cites to Mayfield v. Asta Funding, Inc., 95 F. Supp. 3d 685 (S.D.N.Y. 2015) and Bazemore v. Jefferson Capital Sys., LLC, 827 F.3d 1325 (11th Cir. 2016).  Amazon argues that these "cases are inapposite." Amazon's Reply at 6 n.5 (explaining that, in Mayfield, the defendant provided "18 sample arbitration agreements, none of which were identical" to the one at issue and that in Bazemore, the defendant failed to present evidence that the agreement was sent to plaintiff or that the "agreement contained an arbitration provision.").  Here, Amazon has produced several sample order screens, including "an order screen that was the *only* order screen format used by Amazon from April 4, 2011 to June 26, 2013." Amazon's Reply at 6 (emphasis in original).  Although the Court does not rely on the order screens to decide the instant motion, the Court

Amazon's Conditions of Use including the arbitration clause.  Therefore, the Court need not decide whether Amazon's order and registration/sign-up screens, standing alone, provide reasonable notice.  Rather, based on the instant record, I find that Nicosia had actual notice of the Conditions of Use and the arbitration clause therein.

## STANDARD OF REVIEW

"The [Federal Arbitration Act] makes arbitration agreements 'valid, irrevocable, and enforceable, save upon such grounds as exist at law or in equity for the revocation of any contract.'" Kindred Nursing Centers Ltd. P'ship v. Clark, _ U.S. _, 137 S. Ct. 1421, 1426 (2017) (quoting 9 U.S.C. § 2).  The FAA "establishe[d] a national policy favoring arbitration when the parties contract for that mode of dispute resolution." Preston v. Ferrer, 552 U.S. 346, 349 (2008); see also AT&T Mobility LLC v. Concepcion, 563 U.S. 333, 345 (2011) ("[I]t is beyond dispute that the FAA was designed to promote arbitration").  The Supreme Court has noted that "any doubts concerning the scope of arbitrable issues should be resolved in favor or arbitration." Moses H. Cone Mem'l Hosp. v. Mercury Constr. Corp., 460 U.S. 1, 24-25 (1983).

Nevertheless, the FAA "does not require parties to arbitrate when they have not agreed to do so." Schnabel v. Trilegiant Corp., 697 F.3d 110, 118 (2d Cir. 2012) (quotations and citations omitted)).  Thus, "[t]he threshold question facing any court considering a motion to compel arbitration is therefore whether the parties have indeed agreed to arbitrate." Id.  The "question of

---

may consider the screens, coupled with the declarations submitted by Amazon. See 5381 Partners LLC v. Shareasale.com, Inc., No. 12 CV 4263 (JFB), 2013 WL 5328324, at *5 (E.D.N.Y. Sept. 23, 2013) (citing Fteja v. Facebook, Inc., 841 F. Supp. 2d 829, 834-35 (S.D.N.Y.2012) (relying on declarations and screenshots in evaluating the sign-up process); see also Cordas v. Uber Technologies, No. 16 CV 4065 (RS), 2017 WL 658847, at * 3 (N.D. Cal. Jan 5. 2017) (finding declarations and screenshots admissible as "[i]t is difficult, if not impossible, to conceive of how an 'original' screenshot would be presented."); Kearney v. Okemo Ltd. Liab. Co., No. 15 CV 166 (GWC), 2016 WL 4257459, at *2 (D. Vt. Aug. 11, 2016) (explaining "unlike when a person physically signs a paper contract, such documentation does not necessarily exist in the click-wrap context[]" and that "courts frequently enforce such agreements" where affidavits are submitted to authenticate order screens and agreements.).

whether the parties [] agreed to arbitrate is determined by state contract law principles." Nicosia, 834 F.3d at 229 (citing Specht v. Netscape Commc'ns Corp., 306 F.3d 17, 27 (2d Cir. 2002)). "Where an agreement exists, [and the] asserted claims fall within the scope of the agreement . . . , the arbitration agreement should be 'rigorously enforce[d] . . . according to [its] terms.'" Salameno v. Gogo Inc., No. 16 CV 0487 (JBW), 2016 WL 4005783, at *4 (E.D.N.Y. July 25, 2016), reconsideration denied, 2016 WL 4939345 (E.D.N.Y. Sept. 13, 2016), and appeal withdrawn, (Oct. 14, 2016) (quoting Am. Exp. Co. v. Italian Colors Rest., _ U.S. _, 133 S. Ct. 2304, 2309 (2013)).

"Under the FAA, a party may move the district court for an order directing that arbitration proceed pursuant to the parties' written agreement." Mumin v. Uber Techs., Inc., No. 15 CV 6143 (NGG), 2017 WL 934703, at *7 (E.D.N.Y. Mar. 8, 2017), reconsideration denied sub nom. Ortega v. Uber Techs. Inc., 2017 WL 1737636 (E.D.N.Y. May 2, 2017) (citing Nicosia, 834 F.3d at 229). In deciding a motion to compel arbitration, "courts apply a 'standard similar to that applicable for a motion for summary judgment.'" Nicosia, 834 F.3d at 229 (quoting Bensadoun v. Jobe-Riat, 316 F.3d 171, 175 (2d Cir. 2003)).  As such, courts must "consider all relevant, admissible evidence submitted by the parties and contained in pleadings, depositions, answers to interrogatories, and admissions on file, together with  . . . affidavits." Chambers v. Time Warner, Inc., 282 F.3d 147, 155 (2d Cir. 2002) (quoting Fed. R. Civ. P. 56(c)).  All reasonable inferences must be drawn in favor of the non-moving party. Nicosia, 834 F.3d at 229.

"If there is a genuinely disputed factual issue whose resolution is essential to the determination of the applicability of an arbitration provision, a trial as to that issue will be necessary[.]" Wachovia Bank, Nat. Ass'n v. VCG Special Opportunities Master Fund, Ltd., 661 F.3d 164, 172 (2d Cir. 2011).  However, "where the undisputed facts in the record require the matter of arbitrability to be decided against one side or the other as a matter of law, we may rule

on the basis of that legal issue and 'avoid the need for further court proceedings.'" Id. (quoting Bensadoun, 316 F.3d at 175).

## DISCUSSION

### I.       Amazon Did Not Waive Its Right to Arbitrate

Plaintiff alleges that Amazon waived its right to arbitration by failing to "move to compel arbitration until this case was pending for 32 months." Plaintiff's Memorandum in Opposition to Amazon.com, Inc.'s Motion to Compel Arbitration ("Plaintiff's Opp.") at 5.  Amazon submits that this "argument is ridiculously disingenuous at best and dishonest at worst." Reply Memorandum of Law in Further Support of Defendants Amazon.com, Inc.'s Motion to Compel Arbitration ("Amazon's Reply") at 9.  Although I disagree with Amazon's hyperbolic characterization of plaintiff's position, the Court should find that Amazon did not waive its right to arbitration.

Where a party expresses its intent to litigate rather than arbitrate a dispute, a Court may find that the party waived its right to arbitration. Louis Dreyfus Negoce S.A. v. Blystad Shipping & Trading Inc., 252 F.3d 218, 229 (2d Cir. 2001); see also Meyer v. Uber Techs., Inc., No. 16-2750-CV, 2017 WL 3526682, at *10 (2d Cir. Aug. 17, 2017) ("When the party seeking arbitration has participated in litigation regarding the dispute, the district court can properly decide the question of waiver." (citation omitted)).  In determining whether a party has waived its right to arbitration, courts consider three factors: "(1) the time elapsed from when litigation was commenced until the request for arbitration; (2) the amount of litigation to date, including motion practice and discovery; and (3) proof of prejudice." Louis Dreyfus Negoce S.A., 252 F.3d at 229. "There is no rigid formula or bright-line rule for identifying when a party has waived its right to arbitration; rather, the above factors must be applied to the specific context of each particular case." Louisiana Stadium & Exposition Dist. v. Merrill Lynch, Pierce, Fenner & Smith Inc., 626 F.3d

12

156, 159 (2d Cir. 2010).  However, "[t]he key to a waiver analysis is prejudice." Id. (quoting Thyssen, Inc. v. Calypso Shipping Corp., S.A., 310 F.3d 102, 104 (2d Cir. 2002)).  Here, the record does not support a finding that Amazon waived its right to arbitration.

First, the 32-month period between commencement of the lawsuit and the instant motion, although significant, "does not by itself support a finding of waiver." Chehebar v. Oak Fin. Grp., Inc., No. 14 CV 2982 (LDW), 2017 WL 946292, at *2 (E.D.N.Y. Mar. 7, 2017) (collecting cases where no waiver was found despite delays from four months to three years).  Moreover, and without detailing every reason for the delay, the 32-month period cannot be solely attributed to Amazon.

Second, although there has been a good amount of litigation to date including Amazon's motion to dismiss pursuant to Rule 12(b)(6), an appeal from the district court's determination of that motion, and the post-remand arbitration-related discovery, within the context of this particular case, these proceedings do not reflect that defendant waived its right to arbitration.  Plaintiff argues that Amazon should have moved to compel arbitration at the outset of the litigation and that its failure to do so makes clear that Amazon "chose to litigate the merits of Nicosia's claims *in this Court*."  Plaintiff's Opp. at 6 (emphasis in original).  However, plaintiff's argument "is soundly refuted by Second Circuit precedent[.]"[15] Murray v. UBS Sec., LLC, No. 12 Civ. 5914 (KPF), 2014 WL 285093, at *6 (S.D.N.Y. Jan. 27, 2014) (collecting cases holding that a defendant's filing of a motion to dismiss does not result in a waiver of the right to arbitration); see also Rush v.

---

[15] Prior to oral argument, plaintiff referred the Court to Franke-Ross v. Congregation Ohr Hatalmud, a recent Southern District of New York decision where the Court found that defendants waived their right to compel arbitration. No. 15 Civ. 6566 (NRB), 2017 U.S. Dist. LEXIS 102568 (S.D.N.Y. June 28, 2017).  In Franke-Ross, the Court, in finding waiver, held that defendant "did not inform the Court of [an arbitration agreement signed by plaintiff after the litigation commenced], and its intention to seek enforcement of the Agreement, until seven months after obtaining the Agreement, and until after (1) the Court had denied the [defendant's] motion to dismiss, (2) the plaintiff had filed her Third Amended Complaint . . .  and (3) plaintiff had taken steps to seek a default judgment." Id. at *14.  Even the Court in Franke-Ross stated that the "facts make this case distinguishable from other cases in this Circuit, . . . where courts have found insufficient prejudice to warrant a finding of waiver." Id. at *15.

Oppenheimer & Co., 779 F.2d 885, 888 (2d Cir. 1985) (explaining that defendants' "motion [to dismiss] alone, however, does not waive the right to arbitrate" (citing Sweater Bee by Banff, Ltd. v. Manhattan Indus., Inc., 754 F.2d 457, 463 (2d Cir. 1985)).  Further, although the parties have engaged in discovery, it has been "limited and focused on the issue of whether [Nicosia] agreed to arbitrate."[16] Amazon's Reply at 10.  Although, plaintiff argues that Amazon engaged in substantive fact discovery unrelated to the issue of arbitration, Plaintiff's Opp. at 7, the discovery conducted by Amazon was limited in scope and the Court does not find that Amazon engaged in litigation on "substantial issues going to the merits."[17] Doctor's Assocs. Inc. v. Distajo, 66 F.3d 438, 458 (2d Cir. 1995).

Finally, the Court finds that any prejudice suffered by plaintiff as a result of Amazon's delay in moving to compel arbitration does not warrant a finding that Amazon waived its right to arbitrate.  "The Second Circuit has acknowledged two types of prejudice: 'substantive prejudice and prejudice due to excessive cost and time delay.'" Chehebar, 2017 WL 946292, at *2 (quoting Louisiana Stadium & Exposition Dist., 626 F.3d at 159).  Here, Nicosia argues that as a result of Amazon's actions, he suffered "undue delay, costs, and burden." Plaintiff's Opp. at 8.  However, plaintiff fails to identify "any specific costs incurred, let alone excessive costs, and the costs of the motion practice alone are insufficient to support [the] claim of undue expense." Id. (citing PPG Indus., Inc. v. Webster Auto Parts, Inc., 128 F.3d 103, 107 (2d Cir. 1997) ("Incurring legal expenses inherent in litigation, without more, is insufficient evidence of prejudice to justify a

---

[16] Initially, the Court set separate deadlines for arbitration and substantive fact discovery. See January 20, 2017 Conference Transcript, ECF No. 94.  Although I did not limit discovery strictly to the issue of arbitration, I directed that any substantive discovery be reasonable and proportional. December 15th Transcript, ECF No. 89 at 48.
[17] Plaintiff's claim regarding discovery is belied by the record.  On March 13, 2017, plaintiff's counsel wrote to the Court stating that Amazon had refused to engage in substantive fact discovery and unilaterally limited the scope of discovery to the issue of arbitration. Mar. 13, 2017 Letter, ECF No. 103 (Amazon "has unilaterally halted merits discovery . . . [and] informed plaintiff's counsel that it would no longer participate in written discovery nor appear for depositions . . . .").

14

finding of waiver.")).  Further, as noted by Amazon, a majority of the cases that plaintiff relies on to support a finding that Amazon waived its right to arbitration involve limited situations "where the party seeking arbitration did so after discovery was closed, the case was close to or on the eve of trial, and/or the case had been pending for many years." Amazon's Reply at 11 n.10; see also S & R Co. of Kingston v. Latona Trucking, Inc., 159 F.3d 80, 82 (2d Cir. 1998) (upholding a waiver finding as defendants moved to compel arbitration after a trial date was set); In re Currency Conversion Fee Antitrust Litig., No. 03 Civ. 2843 (WHP), 2005 WL 1705285, at *4 (S.D.N.Y. July 22, 2005) (finding that Citibank waived its right to compel arbitration where Citibank waited until the close of discovery to seek arbitration).

Accordingly, even when viewed in the light most favorable to plaintiff while recognizing the presumption in favor of arbitration, the Court finds that Amazon did not waive its right to arbitration. See Thyssen, Inc., 310 F.3d at 104–05 ("[T]here is a strong presumption in favor of arbitration[, and] waiver of the right to arbitration is not to be lightly inferred."(internal quotations and citations omitted) (alteration in original)); see also LG Elec, Inc. v. Wi-Lan USA, Inc., 623 Fed. Appx. 568, 569 (2d Cir. 2015) (summary order) ("[A]ny doubts [regarding whether a party waived its right to arbitration] are resolved in favor of arbitration." (internal quotations and citations omitted)).

II.     Nicosia's Purchases of 1 Day Diet Pills

Amazon argues that plaintiff had "notice of and is bound by Amazon's Conditions of Use and the arbitration provision contained therein." Memorandum of Law in Support of Defendant Amazon.Com, Inc.'s Motion to Compel Arbitration ("Amazon's Memo") at 1.  Specifically, Amazon argues that plaintiff is bound by the arbitration provision because Nicosia: (1) "continued to place orders on Amazon.com after this litigation began . . . and therefore repeatedly agreed to

arbitrate his claims in this case"; (2) had constructive notice of Amazon's Conditions of Use as he "placed at least 51 orders on Amazon" using various accounts; (3) authorized other individuals to place orders on various Amazon accounts; and (4) purchased the 1 Day Diet pills using Annemarie's Account and that "his wife expressly agreed to various Amazon terms and conditions," including the arbitration provision. Id.  Nicosia argues, *inter alia*, that the "Second Circuit has already rejected most of Amazon's theories and discovery has demonstrated that [Amazon's] remaining arguments are deficient or have been waived."[18] Plaintiff's Opp. at 3.

Upon review of the record, and for the reasons discussed below, I find that plaintiff is bound by Amazon's Conditions of Use and the arbitration provision contained therein.

A.  Applicable Law

In order to decide the instant motion, the Court must determine whether, under state law, the parties contractually bound themselves to arbitrate. See Nicosia, 84 F. Supp. 3d at 149 (citing Alliance Bernstein Inv. Research & Mgmt., Inc. v. Schaffran, 445 F.3d 121, 125 (2d Cir. 2006)). Here, the parties agree that Washington law applies. See Complaint, ¶¶ 103-130, 141-158; Nicosia's Opp. at 13; Amazon's Memo at 11, 14.

The Second Circuit previously explained that "Washington courts have not specifically addressed the question of the reasonableness of notice of additional terms in online contracts, . . . but it is clear that general contract principles under Washington law apply to agreements made online." Nicosia, 834 F.3d at 232 (internal citations omitted); see also Kwan v. Clearwire Corp., No. C09-1392 (JLR), 2012 WL 32380, at *6 (W.D. Wash. Jan. 3, 2012) (The making of contracts

---

[18] Nicosia argues that the Second Circuit decided a number of the arguments presented in Amazon's motion to compel. Plaintiff's Opp. 1-2.  Specifically, Nicosia argues that the Second Circuit decided that "Amazon's website order screen did not provide Nicosia with conspicuous notice of its hyperlink" to the Conditions of Use and that "[t]he mandate rule prevents Amazon from religitating that issue in this Court." Id. at 1.  However, as discussed supra, the Second Circuit found that "reasonable minds could disagree on the reasonableness of [the] notice" and that "factual questions remain[ed] as to the formation of the agreement to arbitrate." Nicosia, 84 F.3d at 238.

over the internet has not fundamentally changed the principles of contract law." (internal quotations omitted)). "Under Washington law, contract formation requires an objective manifestation of mutual assent." <u>Nicosia</u>, 834 F.3d at 232. (citations omitted).  "Manifestation of assent to an online contract  . . . can be accomplished by words of silence, action or inaction, so long as the user intends to engage in the conduct and knows or has reason to know that the other party may infer from his conduct that he assents." <u>Id.</u> (internal quotations and citations omitted).

Courts have identified "[f]our general types of online consumer contracts . . . (a) browsewrap; (b) clickwrap; (c) scrollwrap; and (d) sign-in-wrap." <u>Berkson v. Gogo LLC</u>, 97 F. Supp. 3d 359, 394 (E.D.N.Y. 2015).  Judge Weinstein's <u>Berkson</u> decision concisely defined these contracts:

> *Browsewrap* exists where the online host dictates that assent is given merely by using the site. *Clickwrap* refers to the assent process by which a user must click "I agree," but not necessarily view the contract to which she is assenting. *Scrollwrap* requires users to physically scroll through an internet agreement and click on a separate "I agree" button in order to assent to the terms and conditions of the host website. *Sign-in-wrap* couples assent to the terms of a website with signing up for use of the site's services; . . .

<u>Id.</u> (emphasis in original).

Following the Circuit, this Court assumes that Amazon's "agreement was a hybrid between a clickwrap and a browsewrap agreement." <u>Id.</u> at 236.  However, "regardless of the nomenclature, the classification of an online agreement does not conclude the inquiry, nor does the fact a consumer may have clicked a box." <u>Applebaum v. Lyft, Inc.</u>, No. 16 CV 7062 (JGK), 2017 WL 2774153, at *7 (S.D.N.Y. June 26, 2017).  What matters is whether the user had "actual or constructive notice of the conditions" for using the website. <u>Nicosia</u>, 834 F.3d at 233.  Here, the issue is whether Nicosia knew or should have known that the Conditions of Use containing an arbitration clause applied to his dispute with Amazon. <u>Id.</u> at 236 ("The question is whether a

reasonably prudent offeree would know that the 2012 Conditions of Use governed, such that [the] purchase manifested implied assent to the additional terms." (citations omitted))

    B.   Amazon's Conditions of Use Containing an Arbitration Clause Applies

Prior to August 19, 2011, Amazon's Conditions of Use in effect did not contain an arbitration provision. See 2008 Conditions of Use, Tusa Decl., Ex. M.  However, in August of 2011, Amazon's Conditions of Use was modified to include, *inter alia*, an arbitration clause. See August 19, 2011 Conditions of Use, Ressmeyer Decl., Ex. M.  Nicosia argues that Amazon "failed to provide effective notice [to Nicosia]" regarding the updated Conditions of Use and thus, "there was no assent to [the] changed terms." Nicosia's Opp. at 14.  As a result, Nicosia submits that the unilateral amendment of Amazon's Conditions of Use to include an arbitration agreement renders the modification invalid.  The Court is not persuaded by plaintiff's argument.

Amazon's motion to compel arbitration does not rely on plaintiff's accounts and purchases prior to August 2011.  Nor does Amazon rely on plaintiff or his wife's actions prior to August 2011.  Rather, Amazon argues that Nicosia "ha[d] actual, constructive, and/or inquiry notice of and agreed to Amazon's Conditions of Use and the arbitration clause therein by placing" numerous orders on Amazon after the arbitration clause was added to Amazon's Conditions of Use in 2011. Amazon's Memo at 14.  "By arguing thus, [Amazon] renders its ability to change [the Conditions of Use] without notice irrelevant, as the [Conditions of Use] upon which Amazon's motion is based *were* presented to and agreed to by [] [Nicosia], each and every time [he] made a purchase after August 2011." Ekin v. Amazon Services, LLC, 84 F. Supp. 3d 1172, 1177 (W.D. Wash. 2014) (emphasis in original) (rejecting plaintiff's argument regarding the applicability of Amazon's pre-August 2011 Conditions of Use).  Accordingly, the Court must decide whether Nicosia's actions

after August 2011 provided him notice that Amazon's Conditions of Use contained an arbitration clause.

### C.  Nicosia Had Notice of Amazon's Conditions of Use

#### i.  Actual Notice

Amazon argues that "[i]n continuing to place orders on Amazon.com, [Nicosia] [] clearly and repeatedly assented to the Conditions of Use." Amazon's Memo at 17; see also Amazon's 56.1 ¶¶ 65, 115 (Nicosia placed 31 orders on Amazon.com since filing the lawsuit, 27 of which were placed "after Amazon sent its [September 23, 2014] letter to Judge Townes requesting a pre-motion conference."); September 23, 2014 Letter, ECF No. 13.  Nicosia, in a footnote, argues that Nicosia did not have actual notice as he "never clicked the hyperlink" to the Conditions of Use and "did not see Amazon's arbitration provision until his deposition." Plaintiff's Opp. at 12 n.8. Nicosia's position is unavailing.

"The Second Circuit has held that arbitration clauses without an express limitation to 'future disputes' should be applied to any preexisting claims." Reid v. Supershuttle Int'l, Inc., No. 08 CV 4854 (JG), 2010 WL 1049613, at *5 (E.D.N.Y. Mar. 22, 2010) (citing Coenen v. R.W. Pressprich & Co., 453 F.2d 1209, 1212 (2d Cir. 1972) and Smith/Enron Cogeneration Ltd. Partnership, Inc. v. Smith Cogeneration Int'l, Inc., 198 F.3d 88, 99 (2d Cir. 1999)).  "Therefore, '[t]he relevant question is not when the plaintiff['s] claims arose, but whether they arise under [the] agreements with the defendant." Kai Peng v. Uber Techs., Inc., No. 16 CV 545 (PKC), 2017 WL 722007, at *11 (E.D.N.Y. Feb. 23, 2017) (quoting Reid, 2010 WL 1049613, at *6).  Here, Amazon's Conditions of Use contains no express limitation to 'future disputes'. See Amazon's 56.1 ¶ 88 ("Any dispute or claim relating in any way to your visit to Amazon.com or to products or services sold or distributed by Amazon or through Amazon.com will be resolved by binding

arbitration, rather than in court . . . ."); see also Peters v. Amazon Servs., LLC, 669 F. App'x. 487, 488 (9th Cir. 2016) (summary order) (Amazon's "broad arbitration clause . . . is not limited to prospective disagreements."); Ekin, 84 F. Supp. 3d at 1178 ("Plaintiffs do not meaningfully contest that [Amazon's arbitration agreement's] phrasing encompasses disputes arising from both future *and past* transactions. Nor could they, consistently, given the prevailing law." (emphasis in original)).  Therefore, by continuing to place orders on Amazon.com, plaintiff is bound to the Conditions of Use which requires any dispute with Amazon, both past and future, to be resolved by arbitration. See e.g. Applebaum, 2017 WL 2774153, at **10-11 (granting defendant's motion to compel arbitration on the grounds that plaintiff "assented to the [broad] arbitration provisions" set forth in defendant's Terms of Service even though plaintiff initiated litigation on the dispute prior to agreeing to the arbitration provision.).

It is beyond dispute that Nicosia's post-lawsuit purchases on Amazon.com are governed by the arbitration provision.  Nicosia argues that even though he made such purchases, he did not have notice of the arbitration provision as he never clicked the hyperlink to the Conditions of Use.[19]  See Plaintiff's Opp. at 12 n.8.  The Second Circuit has made clear that "[a]s with paper contracts or shrinkwrap agreements, to be bound, an internet user need not actually read the terms and conditions or click on a hyperlink that makes them available as long as she has notice of their existence." Nicosia, 834 F.3d at 232 (citations omitted).  Otherwise, a person who signs a contract without reading it could maintain that they should not be bound. See Peng, 2017 WL 722007, at *9 ("While the Court is sympathetic to Plaintiffs' argument that their assent was not informed because they were unable to read the Services Agreement, which was provided solely in English, the Court is bound by clearly established law holding that failure to read a contract is not a defense

---

[19] Nicosia states that "[a]fter his deposition, he has not made any purchase on Amazon.com." Plaintiff's Opp. at 12 n.8.  However, it is undisputed that plaintiff continued to make purchases on Amazon after he filed the instant lawsuit.

to contract formation." (citations omitted)).  Accordingly, Nicosia was not required to click on the hyperlink to the Conditions of Use in order to be bound by the terms contained therein.

Whether or not Nicosia clicked on the hyperlink, Amazon argues that Nicosia had actual notice of the arbitration provision through his participation in this lawsuit, and most importantly, through Amazon's September 23, 2014 letter to the Court stating that Nicosia was required to arbitrate the dispute.  The September 23rd letter, followed by nearly three years of this litigation, placed Nicosia on actual notice of Amazon's arbitration clause.[20]   The Supreme Court has explained that in "our system of representative litigation,  . . . each party is deemed bound by the acts of his lawyer-agent and is considered to have 'notice of all facts, notice of which can be charged upon the attorney.'" Link v. Wabash R. Co., 370 U.S. 626, 634, (1962) (quoting Smith v. Ayer, 101 U.S. 320, 326 (1879)).  Nicosia was on notice, through his counsel, of Amazon's arbitration provision and he cannot now argue that he was only put on notice when he was shown various documents at his deposition. See S.E.C. v. McNulty, 137 F.3d 732, 739 (2d Cir. 1998) ("Normally, the conduct of an attorney is imputed to his client[.]"); see also Brandon O. v. Woodlick, No. 13 CV 4116 (NGG) (RML), 2014 WL 5878117, at *4 (E.D.N.Y. Nov. 12, 2014) (explaining that plaintiff was "on notice, through counsel, that Defendants intended to move to dismiss").

Nevertheless, despite notice of the arbitration clause in Amazon's Conditions of Use, Nicosia continued to place orders on Amazon.com.  In doing so, plaintiff agreed that all disputes with Amazon, past and future, would be resolved through arbitration.  The Court finds that on this record, plaintiff had actual notice of Amazon's arbitration provision.  Accordingly, Nicosia's 27

---

[20] At oral argument, plaintiff's counsel stated that Nicosia was aware of the arbitration clause in Amazon's Conditions of Use in part because of Amazon's motion to dismiss, the district court's decision on the motion to dismiss, and the Second Circuit's decision. Oral Argument at 61:15-63:12

purchases on Amazon.com after he received actual notice of Amazon's arbitration provision compels arbitration of plaintiff's ongoing dispute regarding 1 Day Diet pills.

ii. Constructive Notice

Even if plaintiff is not held to have had actual notice of the arbitration provision based on his 27 purchases on Amazon.com after Amazon's September 23, 2014 letter, the Court should find that Nicosia had constructive notice of Amazon's Conditions of Use.

The crux of the Second Circuit's decision on defendant's motion to dismiss in this case lies in its analysis of Amazon's order page and its failure to provide reasonably conspicuous notice of the Conditions of Use. Nicosia, 834 F.3d at 237. Essentially, the Second Circuit found that reasonable minds could disagree whether Amazon's order page with its numerous links and various texts in several font sizes and colors gave Nicosia notice as to Amazon's Conditions of Use.[21] Id. Amazon argues that the Second Circuit incorrectly focused on the entire page rather than "the screen the way [Nicosia] would have seen it[.]" Oral Argument, ECF No. 102 at 46 (citing Specht, 306 F.3d at 31 (refusing to compel arbitration where the reference to the terms and conditions were "on a submerged screen" as "there is no reason to assume that viewers will scroll down to subsequent screens simply because screens are there")). However, the Court has no reason to question the Circuit's finding that reasonable minds could disagree regarding the notice provided by Amazon's order page.[22] Rather, and as Amazon argues, Nicosia had constructive

---

[21]In Meyer, the Second Circuit revisited its decision in Nicosia and explained that the Uber screen "differs sharply from the screen" in Amazon which :

> [C]ontained, among other things, summaries of the user's purchase and delivery information, "between fifteen and twenty-five links," "text ... in at least four font sizes and six colors," and several buttons and advertisements. Nicosia, 834 F.3d at 236-37. Furthermore, the notice of the terms and conditions in Nicosia was "not directly adjacent" to the button intended to manifest assent to the terms[] . . . Id. at 236.

2017 WL 3526682, at *8.

[22]The Circuit's recent decision in Meyer focused on Uber's registration screen, not an order screen. 2017 WL 3526682, at **7-8. Because I find that Nicosia had actual and/or constructive notice of the arbitration provision based on his Amazon purchases after Amazon updated its Conditions of Use to include an arbitration provision, the Court need not

notice of the arbitration clause based on his repeated purchases on Amazon.com. Amazon's Memo at 14-16.

Amazon's position is supported by Judge Weinstein's decision in <u>Salameno</u>, 2016 WL 4005783. In <u>Salameno</u>, Judge Weinstein, granted defendants' motion to compel arbitration and distinguished <u>Berkson</u>, 97 F. Supp. 3d 359, an earlier related case against the same defendant, wherein the Court denied defendants' motion to compel arbitration.  The Court's analysis in <u>Salameno</u> is particularly helpful and instructive.

In <u>Salameno</u>, Judge Weinstein explained that even though <u>Salameno</u> and <u>Berkson</u> involve the same Gogo clickwrap and sign-in agreements, the plaintiffs in each case are different in a material way.  Specifically, Judge Weinstein noted that "unlike the plaintiffs in <u>Berkson</u> the plaintiffs [in <u>Salemeno</u>] [] were repeatedly warned that by using Gogo's product they were agreeing to the terms of use, and they were repeatedly presented with a hyperlink to those terms." <u>Salameno</u>, 2016 WL 4005783, at *5. (noting that in Berkson, "the plaintiffs had only signed-up and used Gogo's product a single time.").   In distinguishing the plaintiffs, Judge Weinstein explained that "[i]n today's technologically driven society, it is reasonable to charge experienced users . . . with knowledge of how hyperlinks work and, by extension, how to access the terms of use" which they are consenting to when they sign-in and/or purchase an item. <u>Id.</u> at *6.

Here, Amazon submits that plaintiff is an experienced, sophisticated, and frequent user of Amazon and its services. Amazon's Memo at 15.  Therefore, "it is reasonable [for this Court] to conclude that [he is] not [an] unsophisticated internet user[]" unaware of defendant's Terms and Conditions. <u>Salameno</u>, 2016 WL 4005783, at *6.  Nicosia attempts to distinguish his case by arguing that this matter is more similar to <u>Berkson</u> as there is no evidence that Nicosia is a

---

address whether the design of Amazon's screens and the language used provides users reasonably conspicuous notice of the Conditions of Use.

sophisticated internet user[23] or that he was repeatedly presented with Amazon's Terms and Conditions. Plaintiff's Opp. at 11 n. 5.  However, again, the record belies plaintiff's position.

Nicosia repeatedly made purchases on Amazon.com.  Beginning in 2008 and continuing through 2016, Nicosia and his family increased their online shopping purchases out of "convenience, more selection . . . and sometimes better prices". Nicosia Dep., Tusa Declaration, Ex. A at 79:24-80:7; see also Amazon's 56.1 ¶¶ 46-51.  Through the years, Nicosia and his family purchased a variety of items through online marketplaces. Id. ¶¶ 50-52.  Since Amazon included an arbitration clause in its Conditions of Use on August 19, 2011, Annemarie's Account has placed 573 orders on Amazon.com. Id. ¶ 76 (Annemarie's Account has placed "627 order on Amazon, 573 of which were placed after August 19, 2011, when the Conditions of Use had an arbitration clause.").  Although Nicosia testified that he does not recall ever reading the terms and conditions of any website, Amazon's 56.1 ¶ 58, Nicosia has been exposed to the terms and conditions for various websites given his purchasing experience. Id. ¶¶ 58-59.  Further, the undisputed evidence makes clear that Nicosia is a sophisticated user of Amazon.com as three Amazon accounts were created in Nicosia's name and Nicosia made at least 51 purchases himself. Id. ¶¶ 60-61, 65.  Importantly, of Nicosia's 51 purchases, 38 were made after Amazon updated its Conditions of Use to include an arbitration clause.[24] Id. ¶113.

---

[23] The Court notes that soon everyone may be considered a sophisticated internet user.  As Meyers quoted, albeit about cellphones, "modern cell phones ... are now such a pervasive and insistent part of daily life that the proverbial visitor from Mars might conclude they were an important feature of human anatomy." Riley v. California, 134 S. Ct. 2473, 2484 (2014).

[24] Although Amazon argues that Nicosia placed at least 51 orders on Amazon.com, given Amazon's position regarding the 2008 Conditions of Use and the August 19, 2011 Conditions of Use, see supra Part II(B), the Court does not rely on Nicosia's purchases prior to August 19, 2011. See Amazon's Memo at 14.  Rather, the Court considers the 38 purchases made by Nicosia after August 19, 2011. See Amazon's 56.1 ¶¶ 65, 113.

The Second Circuit, in drawing on Judge Leval's apple stand analogy in  Register.com,
Inc. v. Verio, Inc., 356 F.3d 393, 401 (2d Cir. 2004), compared the order page viewed by Nicosia
to an apple stand and noted:

> [I]t is as if an apple stand visitor walks up to the shop and sees, above the basket
> of apples, a wall filled with signs. Some of those signs contain information
> necessary for her purchase, such as price, method of payment, and delivery details,
> and are displayed prominently in the center of the wall. Others she may quickly
> disregard, including advertisements for other fruit stands. Among them is a sign
> binding her to additional terms as a condition of her purchase. Has the apple stand
> owner provided reasonably conspicuous notice? We think reasonable minds could
> disagree.

Nicosia, 834 F.3d at 237.  I too draw on Judge Leval's apple stand analogy.  While a first time
visitor may not process the various signs lining the walls of the apple stand, a repeat visitor should
note the signs whether or not they are front and center. See Register.com, 356 F.3d at 401 ("D
cannot continue on a daily basis to take apples for free, knowing full well that P is offering them
only in exchange for 50 cents in compensation, merely because the sign demanding payment is so
placed that on each occasion D does not see it until he has bitten into the apple."); see also Nicosia,
834 F.3d at 237 n.5 (explaining that the apple stand analogy was extended in Fteja v. Facebook,
Inc., 841 F. Supp. 2d 829, 840–41 (S.D.N.Y. 2012), to "a description of imputing knowledge of
terms contained in an unclicked hyperlink, so long as the consequences of assenting are conveyed
and the user is directed where to click to view the additional terms.").  Simply put, reasonable
minds may disagree whether Amazon's order screen provides reasonable notice of the Conditions
of Use to a greenhorn user.  However, after 38 visits to the same apple stand, reasonable minds
would agree that the user should know that the stand's apples are not for free.

Accordingly, I find that even if plaintiff did not have actual notice of the Conditions of Use
and the arbitration provision through the instant lawsuit, he had constructive notice of the provision
based on his repeat purchases on Amazon.com.

### iii.  Amazon's Additional Theories

Amazon also argues that plaintiff is bound by the arbitration provision as he: (1) authorized other individuals to place orders on various Amazon accounts; and (2) purchased the 1 Day Diet pills using Annemarie's Account which had signed up for Amazon Mom and Amazon Prime.  As the Court has already found that plaintiff is bound by the arbitration provision as he had actual and/or constructive notice based on his specific purchases and actions, the Court need not reach Amazon's additional arguments but I do so briefly to be thorough.

### 1.  Agency

Amazon argues that plaintiff is bound by the Conditions of Use because "he authorized other individuals,  . . . to place orders on his account on his behalf." Amazon's Memo at 16. Relying on agency principles, Amazon submits that Nicosia gave individuals, including his wife, either actual or apparent authority to enter into contracts with Amazon. Id. at 16-17.  In opposition, Nicosia posits several arguments: (1) that his agents did not have the authority to accept Amazon's Conditions of Use on his behalf; (2) that, even if an agency relationship existed, it was limited to the purchases made by the agents and not to Nicosia's purchase of 1 Day Diet pills; and (3) that Amazon cannot show that Nicosia's agents had notice of Amazon's Condition of Use in making the various purchases.[25] Nicosia's Opp. at 21-24.  The record before the Court does not support

---

[25] Nicosia also argues that Amazon failed to plead agency as an affirmative defense and thus waived such a defense. Nicosia Opp. at 20.  Amazon submits that arbitration is the relevant affirmative defense and not agency. Amazon's Reply at 11-12.  "An affirmative defense is defined as '[a] defendant's assertion raising new facts and arguments that, if true, will defeat the plaintiff's or prosecution's claim, even if all allegations in the complaint are true.'" Saks v. Franklin Covey Co., 316 F.3d 337, 350 (2d Cir. 2003) (quoting Black's Law Dictionary 430 (7th ed. 1999) (alterations in original)); see also Fed. R. Civ. P. 8(c).  I am not persuaded that Amazon was required to specifically plead agency as an affirmative defense.  The Second Circuit has held, it is "the rare case where agency is an affirmative defense." Garanti Finansal Kiralama A.S. v. Aqua Marine & Trading Inc., 697 F.3d 59, 72 (2d Cir. 2012) (finding that "[t]he issue of agency in [a][] *declaratory judgment* action, . . . presents itself as an affirmative defense" (emphasis added)). Even if Amazon were required to plead agency as an affirmative defense, the Court sees no reason why Amazon could not amend its answer to affirmatively raise such a defense. See Saks, 316 F. 3d at 350-51 ("[A] district court may still entertain affirmative defenses at the summary judgment stage in the absence of undue prejudice to the plaintiff, bad faith or dilatory motive on the part of the defendant, futility, or undue delay of the proceedings. In such circumstances, the district court may construe the motion for summary judgment as a motion to amend the defendant's answer.").

defendant's position that Nicosia's agents had the necessary authority to bind Nicosia to Amazon's Conditions of Use.

"Under Washington law, an agency relationship 'arises when one person (a principal) manifests assent to another person (an agent) that the agent shall act on the principal's behalf and subject to the principal's control, and that agent manifests assent or otherwise consents so to act.'" Nicosia's Opp. at 16 (quoting Revitalization Partners, LLC v. Equinix, Inc., No. 16 CV 1367, 2017 WL 823291, at *4 (W.D. Wash. Mar. 2, 2017) (additional internal citations omitted)).  Although Nicosia admits that he authorized various individuals to purchase items using his credit card, his testimony does not support a finding that he authorized them to purchase the items specifically from Amazon.com. Nicosia's Dep. 209:1-25 ("Q: "Were you aware that he was going to make that purchase on Amazon.com? A: I'm not  - - that's a good question. I don't recall."); see Mohammed v. Uber, No. 16-2537 (JZL), 2017 WL 590289, at **7-9 (N.D. Ill. Feb. 14, 2017) (finding, on a motion to dismiss, that plaintiff's agent did not have the authority to accept agreements on his behalf without notifying him).[26]  Further, even if Nicosia gave the agents such authority, Amazon cannot show that the agents had notice of the Conditions of Use when they made purchases on Amazon.com such that they could bind plaintiff. [27]

---

[26] Amazon argues that Mohammed is distinguishable from the instant matter as the Court had "a limited record before it with no discovery on a motion to dismiss." Amazon Reply, at 3 n. 3.  Amazon's analysis of Mohammed is correct. However, the record before the Court, even at this stage of the litigation, is still insufficient to find that plaintiff's agents had the necessary authority to bind him to Amazon's Conditions of Use.

[27] It is also unclear whether Amazon's theory of agency applies when the agent's purchase is unrelated to the disputed good and/or service at issue. In fact, all of the cases cited by Amazon in support of its agency theory involve disputes relating directly to the purchase made by the agent. See Oahn Nguyen Chung v. StudentCity.com, Inc., No. 10 CV 10943, 2013 WL 504757, at **2-4 (D. Mass. Feb 12, 2013) (compelling arbitration after determining that plaintiff's parents had authorized her to make payments using their credit card on StudentCity.com and, in doing so, assented to the site's customer agreement specifically for her vacation); Hoffer v. The GAP, Inc., 516 F. Supp. 2d 161 (D. Mass. 2007) (where plaintiff sued Expedia.com relating to airline tickets purchased by plaintiff's friend for plaintiff); Adsit Company, Inc. v. Gustin, 874 N.E.2d 1018 (Ind. Ct. App. 2007) (finding that the actual purchaser functioned as the agent for the individual whose credit card was used to pay for the item in dispute).

Accordingly, the Court should not rely on Amazon's agency theory to grant Amazon's motion to compel arbitration.

2. Derivative Rights

Amazon also argues that Nicosia is bound by Amazon's Conditions of Use as he purchased the 1 Day Diet pills from Annemarie's Account, which is subject to the Mom and Prime Terms and Conditions. Amazon's Memo at 18-22. Specifically, Amazon submits that Annemarie's agent, Dennis, enrolled Annemarie's Account in Amazon Mom, and in doing so, accepted the Mom and Prime Terms and Conditions. Id. at 19. In addition, after Annemarie's Account's free Prime trial concluded, which was a part of Amazon Mom, Annemarie expressly signed up for Amazon Prime and agreed to the Prime Terms and Conditions. Id. at 21. Accordingly, Amazon argues that Annemarie's Account, in signing up for the programs, agreed to the Conditions of Use, including the arbitration clause and the class action waiver. Therefore, under Amazon's 'derivative rights' theory, Nicosia is "bound by the Conditions of Use to which the Nicosia's Prime Account agreed[.]" Id. at 22.

Nicosia does not dispute that Annemarie's Account enrolled in the Amazon Mom and Prime programs. See generally Nicosia's Opp. Rather, Nicosia argues that Annemarie "never actually clicked on a hyperlink to or read the Prime [Terms and Conditions], the Mom [Terms and Conditions], and the Conditions of Use." Amazon's Reply at 4. However, "[w]hether or not the consumer bothers to look is irrelevant." Fteja v. Facebook, Inc., 841 F. Supp. 2d at 839-40 (finding that plaintiff "was informed of the consequences of his assenting click and when he was shown, immediately below, where to click to understand those consequences. That was enough."). Although the Second Circuit found that Amazon's order screens may not provide proper notice, the Second Circuit did not decide whether Amazon's registration screens provided proper notice

to users.[28]  The record makes clear that the registration screens for Amazon Mom and Prime are different in both format and presentation from the Amazon order screens.  Courts have upheld similar registration screens and systems as providing proper notice to users. See e.g. Ekin, 84 F. Supp. 3d at 1175 n. 5 (explaining that plaintiffs could "not dispute that they accepted the arbitration agreement  . . . through active purchases and renewals . . . of their Prime membership"); Selden v. Airbnb, Inc., No. 16 CV 933 (CRC), 2016 WL 6476934, at *5 (D.D.C. Nov. 1, 2016) ("[A]greements tend to be enforced if the hyperlinked terms and conditions is next to the only button that will allow the user to continue use of the website" (internal citations and quotations omitted) (collecting cases)); Starke v. Gilt Groupe, Inc., No. 13 Civ. 5497 (LLS), 2014 WL 1652225, at *3 (S.D.N.Y. Apr. 24, 2014) ("Regardless of whether he actually read the contract's terms, [plaintiff] was directed exactly where to click in order to review those terms, and his decision to click . . . the button represents his assent to them."); see also Meyers, 2017 WL 3526682, at *9 (Reviewing a similar registration screen and finding that "[a] reasonable user would know that by clicking the registration button, he was agreeing to the terms and conditions accessible via the hyperlink, whether he clicked on the hyperlink or not.").

As Annemarie's Account is bound by the Terms and Conditions as well as the Conditions of Use, which were agreed to through registrations and renewals of the Amazon Mom and Prime programs, Nicosia is left in the unenviable position of having to distinguish his purchase of 1 Day Diet pills from Annemarie's Account.  Specifically, Nicosia argues that Amazon's position lacks merit as: (1) it "ignores the fact that Nicosia did *not* sign into his wife's account" to purchase the

---

[28] In its decision, the Second Circuit explicitly refused to consider the registration and sign-up screens. Nicosia, 834 F.3d at 235.  The Court only reviewed the order screen to determine whether it provided sufficient notice as a matter of Washington law. Id. at 236-238.

1 Day Diet pills;[29] and (2) "Nicosia had his own account agreements with Amazon that governed the relationship between them[.]"[30] Nicosia Opp. at 24 (emphasis in original).  However, whether plaintiff signed in to Annemarie's account on the day of the purchase, it is undisputed that he used Annemarie's Account to purchase the 1 Day Diet pills.  As explained by the Court in Motise v. America Online, Inc., allowing Nicosia to use Annemarie's Account without holding his purchases to the Terms and Conditions agreed of the account "would permit individuals to avoid the [] Terms of Service simply by having third parties create accounts and then using them as the Plaintiff did." 346 F. Supp. 2d 563, 566 (S.D.N.Y. 2004).

Notwithstanding the persuasiveness of Amazon's 'derivative rights' theory, the Court need not review the registration page or rely on 'derivative rights' to grant Amazon's motion to compel.[31]

III.     Plaintiff's Challenge to the Validity of the Contract Must be Resolved by the Arbitrator

Finally, Nicosia argues that because the "[s]elling or distributing of sibutramine is illegal" he cannot be bound by any contract with Amazon. Plaintiff's Opp. at 17-18.  This issue was thoroughly addressed by Judge Townes in her decision granting defendants' motion to dismiss where she concluded that the "challenge that the entire purchase agreement . . . is void *ab initio* as an illegal contract is a challenge to the contract as a whole and must go to the arbitrator." Nicosia, 85 F. Supp. 3d at 153 (explaining that "the FAA limits a district court's role to determining

---

[29] Plaintiff alleges that he did not know Annemarie's Account's password and "Amazon's system[] [is] set up to save the account credential from a past user." Nicosia Opp. at 24.

[30] Nicosia also argues that Amazon's derivative rights theory fails as Amazon's Conditions of Use provides that "[a]ny unauthorized use terminates the permission or license granted by Amazon." Nicosia's Opp. at 24 (alteration in original) (citations omitted).  Nicosia provides no analysis or case law to substantiate his position.  Amazon is not arguing that Nicosia was an unauthorized user of the Annemarie Account.  Rather, Amazon is specifically arguing that Nicosia was authorized to use the account and that the account was bound by the arbitration provision.  However, even if Nicosia is considered an unauthorized user, the fact that the "permission or license granted by Amazon" would be terminated would not alter the fact that the arbitration clause controls the resolution of any dispute. See infra Part III.

[31] See supra, footnote 22.

threshold '[q]uestions of arbitrability,' i.e., determining whether a valid arbitration agreement exists and whether the agreement encompasses the disputes at issue." (quoting <u>Republic of Ecuador v. Chevron Corp.</u>, 638 F.3d 384, 393 (2d Cir. 2011)).  Although the Second Circuit found "factual questions remain[ed] as to the formation of the agreement to arbitrate[,]" the Court did not rule on the issue of the contract's validity. <u>Nicosia</u>, 834 F.3d at 238 n.7.

The Supreme Court has made clear that there are two types of challenges under the FAA, "[o]ne type challenges specifically the validity of the agreement to arbitrate," and "[t]he other challenges the contract as a whole, either on a ground that directly affects the entire agreement (*e.g.,* the agreement was fraudulently induced), or on the ground that the illegality of one of the contract's provisions renders the whole contract invalid." <u>Buckeye Check Cashing, Inc. v. Cardegna</u>, 546 U.S. 440, 444 (2006).  Claims of the first type may be adjudicated by the court; however, "a party's challenge to another provision of the contract, or to the contract as a whole, does not prevent a court from enforcing a specific agreement to arbitrate." <u>Damato v. Time Warner Cable, Inc.</u>, No. 13 CV 994 (ARR), 2013 WL 3968765, at *4 (E.D.N.Y. July 31, 2013) (quoting <u>Rent-A-Ctr., W., Inc. v. Jackson</u>, 561 U.S. 63, 70 (2010)); <u>see also</u> <u>Edwards v. Macy's Inc.</u>, No. 14 Civ. 8616 (CM), 2015 WL 4104718, at *4 (S.D.N.Y. June 30, 2015) ("Whether an arbitration agreement was made is for the Court to decide. Everything else is for the arbitrator.").

Here, plaintiff's argument is premised not on the invalidity of the arbitration clause nor on the formation or execution of the contract.  Rather, plaintiff alleges that the entire contract is illegal as a result of Amazon's selling of 1 Day Diet pills.[32]  However, <u>Buckley</u> makes clear that where a

---

[32] Plaintiff argues that <u>Granite Rock Co. v. International Brotherhood of Teamsters</u>, 561 U.S. 287 (2010), "limited <u>Buckeye</u> and clarified that, 'where the dispute at issue concerns contract formation, the dispute is generally for the courts to decide.'" Plaintiff's Opp. at 19 (quoting <u>Granite Rock</u>, 561 U.S. at 296).  In support of his position, plaintiff cites to <u>Delgado v. Ocwen Loan Servicing, LLC</u>, No. 13 CV 4427 (NG), 2016 WL 4617159, at *9 (E.D.N.Y. Sept. 2, 2016).  In <u>Delgado</u>, defendant argued that "<u>any</u> challenge to a contract as a whole rather than to the arbitration clause specifically . . . must be determined by an arbitrator." <u>Id.</u> at 10 (emphasis in original).  However, in rejecting defendant's argument, the Court explained that <u>Granite Rock</u> essentially confirmed the Second Circuit's "limited

31

party "challenge[s] [] the validity of the contract as a whole, and not specifically [] the arbitration clause, [the issue] must go to the arbitrator. 546 U.S. at 449; see also Rent-A-Center, West, Inc., 561 U.S. at 71 ("[W]here the alleged fraud that induced the whole contract equally induced the agreement to arbitrate which was part of that contract—we nonetheless require the basis of challenge to be directed specifically to the agreement to arbitrate before the court will intervene"); Cypress v. Cintas Corp. No. 2, No. 16 CV 2478 (ADS), 2017 WL 564492, at *4 (E.D.N.Y. Feb. 11, 2017) (collecting cases) (holding that plaintiff's arguments contesting the enforceability of the contract are subject to arbitration); Lapina v. Men Women N.Y. Model Mgmt. Inc., 86 F. Supp. 3d 277, 287 (S.D.N.Y. 2015), appeal dismissed (Sept. 28, 2015) (holding that plaintiff's assertions regarding the illegality of the contract must go to an arbitrator); Cole v. Pearson Educ., Inc., No. 10 Civ. 7523 (JFK)(RLE), 2011 WL 4483760, at *5 (S.D.N.Y. Sept. 28, 2011) (holding that plaintiff's allegations concerning fraudulent inducement "clearly go to the validity of the contract as a whole and are not specific to the arbitration clause"). Accordingly, plaintiff's challenge to the validity of the contract is subject to arbitration.

## CONCLUSION

Accordingly, the Court should grant Amazon's motion to compel arbitration as Nicosia had actual and/or constructive notice of Amazon's Conditions of Use and the arbitration clause contained therein. The Court should stay this action for six months or until the arbitration is complete, whichever comes first, so that plaintiff can pursue his claims. See Katz v. Cellco P'ship, 794 F.3d 341, 345 (2d Cir. 2015), cert. denied, 136 S. Ct. 596 (2015) (The FAA "requires a stay

---

exception to the requirement of arbitration for general contract challenges where a party attacks the very existence of a contract in the first place." Id. (collecting cases). Thus, Delgado stands for the proposition that if a party challenges the formation or execution of the contract, "it is the court's role to determine whether a contract exists." Id. Importantly, Delgado does not alter the Court's decision in Buckley as it noted that "attacks [on] the validity, rather than the existence, of the contract as a whole, . . . must go to the arbitrator[.]" Id. at 11.

of proceedings when all claims are referred to arbitration . . . .").  If this Report is adopted, the parties should be ordered to file a status report regarding the arbitration within six months.

## FILING OF OBJECTIONS TO THIS REPORT AND RECOMMENDATION

Pursuant to 28 U.S.C. § 636(b)(1) and Rule 72(b) of the Federal Rules of Civil Procedure, the parties shall have fourteen (14) days from service of this Report to file written objections. See also Fed. R. Civ. P. 6. Such objections shall be filed with the Clerk of the Court. Any request for an extension of time to file objections must be made within the fourteen-day period. Failure to file a timely objection to this Report generally waives any further judicial review. Marcella v. Capital District Physician's Health Plan, Inc., 293 F.3d 42 (2d Cir. 2002); Small v. Secretary of Health and Human Services, 892 F.2d 15 (2d Cir. 1989); see Thomas v. Arn, 474 U.S. 140, 106S. Ct. 466, 88 L. Ed. 2d 435 (1985).

_____/S/_____
LOIS BLOOM
United States Magistrate Judge

Dated: August 18, 2017
       Brooklyn, New York

33